(51 App. Div. 47.)

### CARVER v. WAGNER et al.

(Supreme Court, Appellate Division, Fourth Department. April Term, 1900.)

1. MORTGAGES—FORECLOSURE—COUNTERCLAIM.

   Code Civ. Proc. § 501, provides that, in an action on contract, any other cause of action on contract existing at the commencement of the action may be a counterclaim. In an action to foreclose a mortgage, defendant alleged as a counterclaim that the mortgagee, who was her sister, had lived in the family under an agreement to pay defendant $1 per week until her financial condition enabled her to pay more; that thereafter she received a pension of $12 per month, with $1,200 arrearages; that she had not paid defendant in full, nor made provision for defendant by will, as agreed,— and asking for $4 per week for her services, and for judgment for "about $1,500," the balance due defendant. *Held* a proper subject of counterclaim.

2. SAME—ADMISSION OF FACTS.

   In an action to foreclose a mortgage, with a personal judgment against the mortgagee, where defendant pleaded a counterclaim, to which no reply is served, the facts constituting the counterclaim will stand admitted.

**3. HUSBAND AND WIFE—COUNTERCLAIM OF WIFE.**

Laws 1860, c. 90, § 2, authorizes a married woman to carry on a separate business and to own her earnings, as her sole property. Laws 1896, c. 272, § 21 (Domestic Relations Law), provides that a married woman shall have all the rights to contract as to her property and to carry on any business as if she were unmarried. In an action against a wife to foreclose a mortgage, with a personal judgment against her, defendant pleaded as a counterclaim the value of services under a contract she had made with the mortgagee, who was her sister, for board and services in caring for the mortgagee in the family. Payments had been made by the mortgagee to the sister. Defendant's husband, who provided for the family, assented to the agreement and to the payments made thereunder, and made no claim for the services. Defendant had no separate business, except occasionally the making of vests. *Held*, that the counterclaim did not inure to the husband, and hence was a proper subject of set-off by the wife.

**4. SAME—HUSBAND AS WITNESS—ESTOPPEL.**

In an action against a wife to foreclose a mortgage, where the wife pleaded as a counterclaim an agreement with plaintiff's decedent, the mortgagee, that she had cared for her in her family, and that she was to be paid for the services, the husband of the wife, being joined as party defendant, and testifying as a witness to the agreement his wife had entered into, is estopped from afterwards asserting that the demand belongs to him.

Appeal from special term, Monroe county.

Action by Augustus E. Carver, as executor of the estate of Mary D. Tower, deceased, against Harriet E. Wagner and another, to foreclose a mortgage, with a personal judgment against the obligor on a bond to which the mortgage was collateral. From a judgment in favor of plaintiff, decreeing foreclosure, and also from an order denying defendants' motion for an inspection and discovery of papers and accounts of plaintiff's testatrix, defendants appeal. Reversed.

This action was brought to foreclose a mortgage given by the defendant Harriet A. Wagner to the plaintiff's testatrix, Mary D. Tower, bearing date November 27, 1896, to secure the payment of $1,000 and interest thereon according to the conditions of a bond to which said mortgage was collateral, and asks for a personal judgment against said obligor. The mortgagee, Mrs. Tower, died, a resident of Massachusetts, on the 22d day of March, 1899, leaving a last will and testament, executed in 1877, and which was duly admitted to probate in that state, and ancillary letters testamentary were issued to the plaintiff by the surrogate of the county of Monroe.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

O. H. Stevens, for appellants.
John B. Kiley, for respondent.

SPRING, J. The bond and mortgage in this case bear date June 10, 1896. They are each acknowledged November 27th of that year. By their terms the principal sum of $1,000 is due three years from date, with annual interest. The action was commenced October 26, 1899, and therefore, by the strict letter of the contract, the whole sum secured by the mortgage was due prior to the commencement of the action. The complaint alleges that the bond and mortgage were delivered November 27, 1896, and treats the obligation as commencing to run from that date, and hence no part of the principal was due when the action was commenced. The findings of facts in the decision of

the trial court follow the complaint, but find the whole sum secured due, because of default in the payment of interest, although the complaint contained no allegation to that effect, or of an election to consider the whole sum due, and the bond contains no provision permitting that election to be made. We advert to these inconsistencies in the record to enable the court on another trial to straighten them out.

The answer, after a few unimportant denials, contains a counterclaim alleging that the said testatrix, Mary D. Tower, and the mortgagor were sisters; that Mrs. Tower lived with the defendants from 1876 until 1895; that she came into the family of the defendants pursuant to an agreement whereby she was to pay $1 per week to said Harriet A. Wagner for caring for and providing a home for her "until such time as her financial condition should enable her to pay more, and that, should that time come, the compensation should be more"; that thereafter said testatrix received from the United States government a pension of $12 per month, and arrearages amounting to $1,200; that she paid her sister from time to time in pursuance of the agreement, but not in full, as stated, adding that adequate compensation would be made to defendant by her will; that in her will no provision was made for the claim of the said defendant; that the services rendered by the latter in the fulfillment of the agreement referred to were worth $4 per week. The defendant asks for an accounting, the ascertainment of the balance due her, and for judgment for "about $1,500." The counterclaim contained an affirmative, independent cause of action existing in favor of the defendant at the time of the commencement of the action, and was therefore a proper counterclaim, within the Code definition (Code Civ. Proc. § 501). Seligman v. Dudley, 14 Hun, 186; Merritt v. Gouley, 58 Hun, 372, 12 N. Y. Supp. 132.

No reply was served to this counterclaim, and the facts constituting it therefore stand admitted, and hence only a computation was necessary to determine the extent of the defendants' demand. On the trial, however, the facts out of which the defendants' cause of action arose were gone into, and it appeared that Harriet A. Wagner was the wife of John J. Wagner, the other defendant, during the whole period she was providing for her sister; that these defendants composed the family; that the dwelling belonged to the wife; that the sisters were the only parties to the agreement, and all payments made by Mrs. Tower for the home and care furnished to her were to the wife; that the husband knew and assented to the agreement, and to the payments in compliance with it; that he, in the main, provided for the family, and the wife had no separate business, except occasionally the making of vests; that, apparently, no claim was made by the husband for the pay accruing for these services. The court below held that the claim, if any, inured to the husband, and consequently was not a proper subject of counterclaim by his wife, the mortgagor. We cannot assent to this doctrine. Section 2 of chapter 90 of the Laws of 1860 authorizes a married woman to carry on a separate business, and to own her earnings, as her sole property. Section 21 of chapter 272 of the Laws of 1896 (Domestic Relations Law), in amplification of this authority, provides:

"A married woman has all the rights in respect to property, real or personal, and the acquisition, use, enjoyment and disposition thereof, and to make contracts in respect thereto with any person including her husband, and to carry on any business, trade or occupation, and to exercise all powers and to enjoy all rights in respect thereto and in respect to her contracts, as if she were unmarried; but a husband and wife cannot contract to alter or dissolve the marriage or relieve the husband from his liability to support his wife."

It is very obvious that these enactments do not destroy the common-law unity of the marital relation. The husband is still entitled to the services of his wife. Porter v. Dunn, 131 N. Y. 314, 30 N. E. 122; Blaechinska v. Howard Mission & Home for Little Wanderers, 130 N. Y. 497, 29 N. E. 755; Coleman v. Burr, 93 N. Y. 17; In re Callister's Estate, 163 N. Y. 294, 47 N. E. 268. But these cases recognize a plain exception to the rule; and that is, if the wife renders services for another, with the assent of the husband, and with his acquiescence in payment to her therefor, the compensation belongs to her absolutely. The husband can forego his right to his wife's earnings, and, unless done in fraud of creditors, the property she acquires with his knowledge and assent, whether within the household or without, vests in her. Stokes v. Pease, 79 Hun, 304, 29 N. Y. Supp. 430; Sands v. Sparling, 82 Hun, 401, 31 N. Y. Supp. 251; Lashaw v. Croissant, 88 Hun, 206, 34 N. Y. Supp. 667; Birkbeck v. Ackroyd, 74 N. Y. 356. In Stokes v. Pease, 79 Hun, 304, 29 N. Y. Supp. 430, the plaintiff was a married woman living with her husband, and cared for her invalid sister under an agreement between them that this sister would devise to the plaintiff her property. The plaintiff sought to enforce her claim upon the death of her sister, who had failed to make the expected devise, but it was disallowed on the ground that her services belonged to her husband. The judgment was reversed, and the court, after quoting the statutes extending the rights of married women, says:

"Under these statutes, if a married woman, with the knowledge of her husband, renders services to a third person pursuant to a contract for compensation, she may maintain an action to recover the price agreed, or the value of the services rendered."

This does not violate the rule that the husband is entitled to his wife's services, and that no claim can be established against him. And many of the cases discussing the question arose where an attempt was made to enforce the demand against him or his personal representatives upon an alleged agreement with him. That is a very different question from one where the services are rendered to a stranger with the assent of the husband, and upon a contract, made with his knowledge and approbation, that the compensation is to be paid to her, and ratified by the actual payment for a part of the services performed. The distinction is clear, and is well recognized by the authorities. In the one case the wife is seeking to maintain her claim in antagonism to the husband, and in disregard of her wifely duties. In the other case the husband, the party affected, renounces his paramount right to the money she has earned. In the present case the husband was a party defendant, and a witness in vindication of the agreement his wife had entered into. His testimony estops him from hereafter asserting that the demand belongs to him, in case the claim

of the wife is upheld. Stamp v. Franklin, 144 N. Y. 607–611, 39 N. E. 634.

The judgment is reversed, with costs to the appellants, and a new trial ordered, and the order affirmed, with $10 costs, without prejudice to plaintiff to apply for leave to serve reply. All concur.