### ROSE v. LEASK et al.

(Supreme Court, Appellate Division, First Department. March 20, 1908.)

1. EXECUTORS—ACTIONS—EVIDENCE.

Where plaintiff rendered services to decedent for a number of years, and from time to time received payments from him which she accepted and applied to her own use, and never during the period of service expressed any dissatisfaction as to the amount of the payments or made a request for additional compensation, a presumption arises that the payments were made and received as full compensation for the services rendered, and the burden is upon plaintiff seeking additional compensation of proving that there was an agreement for the greater sum, or that plaintiff's claim was not fully discharged by the payments made and accepted.

2. SAME—CONTRACT OF DECEDENT—EVIDENCE TO ESTABLISH.

When plaintiff, who seeks additional compensation for services rendered a decedent during his lifetime, relies upon an alleged contract under which she was to receive for her services an amount far greater than

the sum of the regular payments accepted by her, such contract must not only be definite and certain and founded upon an adequate consideration, but must also be established by the clearest and most convincing evidence; and, if based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 1873.]

3. SAME—ACTIONS—EVIDENCE.

In an action to recover for services rendered a decedent prior to his death, evidence examined, and *held* insufficient to show any understanding, express or implied, between plaintiff and decedent, that the former should ever receive any compensation for her services, except that regularly paid to her.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 1873.]

Patterson, P. J., and Houghton, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Mary F. Rose against George Leask and others as executors. From a judgment for plaintiff, defendants appeal. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

J. Hampden Dougherty, for appellants.

Lincoln McCormack, for respondent.

INGRAHAM, J.   The action is to recover for services rendered by the plaintiff to the defendants' testator during the seven years prior to his death on the 30th of January, 1904, "as financial adviser and private secretary of the testator, attending to all his correspondence of a social nature, advising him in connection with all social matters, managing his home, wherever it happened to be, accompanying him and attending to his wants while traveling, nursing him when ill, and constantly, throughout the said seven years and upwards, giving him the aid, attention, and companionship of a daughter." The complaint is somewhat indefinite as to whether the amount of $35,000 that the plaintiff seeks to recover is claimed to be the value of her services to the decedent during that period or whether the plaintiff's cause of action was based upon a specific agreement with the decedent as to the amount she should be paid for these services. The complaint incidentally alleges that the plaintiff was a music teacher in the town of Dover, in the state of New Jersey, from which the plaintiff derived an income sufficient to care for herself and her mother, and that the value of the services rendered to the decedent and the just and fair compensation for the surrender of the profession of music teaching and the giving of such services aforesaid was $35,000, for which she seeks to recover. So it may be assumed that the action is based upon the value of the services rendered, and the just and fair compensation for the surrender of the profession of music teaching, although in another part of the complaint allusion is made to "an arrangement made between the said plaintiff and the said Hudson Hoagland," but just what that agreement was is not stated, and there was no proof of it upon the trial. The answer, after denying all knowledge or information suffi-

cient to form a belief as to the material allegations of the complaint, alleges that for all services of whatever nature rendered by the plaintiff to the decedent the said decedent fully paid and compensated the plaintiff for during his lifetime; that during the year commencing January 2, 1897, and terminating January 2, 1898, he paid to her as a salary in full for all services the sum of $1,000 in money in equal quarterly payments, and that during each of the years from January 2, 1898, until his decease, he paid to her as a salary in full for all services the sum of $1,500 in money, in equal quarterly payments; that, besides making such payments to the plaintiff, he maintained the plaintiff as a member of the family during the whole period of her connection therewith without expense to her, and at her request paid, laid out, and expended large sums of money for the benefit of her mother, Cornelia C. Rose, a niece of the decedent; and that the decedent also made bequests in his will to the said Cornelia C. Rose, and upon her death to the plaintiff. The fact of the alleged payments by the decedent to the plaintiff and the provision in favor of plaintiff and her mother by the decedent's will were admitted by the plaintiff upon the trial. It was there proved that the plaintiff was a grandniece of the decedent, a man then upwards of 70 years of age, and whose wife had just died, and went to live with and care for him and remained with him until his death on the 13th of January, 1904, something over seven years; that during that period the decedent paid to the plaintiff a regular salary in equal quarterly payments of $1,000 for the first year, and $1,500 for each of the succeeding years, and all the plaintiff's living expenses during that period; and that there was no express agreement or understanding that the plaintiff was to receive any additional or further compensation for the services that she rendered. The question that is presented is whether an employé under such circumstances can, without having made any demand against the decedent during his lifetime, express any dissatisfaction with the compensation she was receiving, or make any claim that the amount that she was paid was not in full for her services, recover upon evidence that in the opinion of those familiar with the services rendered they were worth much more than the decedent had paid her and she had accepted. In thus stating baldly the question presented, I do not consider these alleged declarations made by the decedent during his life as to his intentions in regard to the plaintiff, as, for reasons that I will state hereafter, it does not seem to me that the declarations are at all material upon this cause of action as alleged, and they fall far short of substantial evidence of any agreement by the decedent to pay her for the services that she had rendered. If such a claim can be made and sustained, it would subject the estate of every wealthy man to a claim on behalf of all his employés, as I suppose there are few of that class but what consider the services that they render much more valuable than the compensation they receive therefor, and it would not be difficult to obtain evidence as to the enhanced value of such services.

The counsel for the plaintiff announced at the opening of the trial that he would endeavor to prove a special contract under which the decedent promised that, if the plaintiff would give up her home, he would

provide her with sufficient funds to support her mother, and give her whatever money was necessary to enable her to keep up the position which he thought was due to the head of his household, and also that, when he died, he would leave her all the money she could spend. No such contract was proved, and the learned referee found:

"There is no direct proof that there was any arrangement or understanding between the plaintiff and the said decedent substantially defining the measure and character of the compensation which she was to receive."

And upon these facts the referee found as conclusions of law that, upon the facts proved, there was no presumption of law that the services for which the plaintiff seeks to recover were rendered by her gratuitously or without expectation of reward; that there being no such presumption, and the said services having been rendered by the plaintiff at the request of the defendants' decedent, the law implies a promise by him to pay the plaintiff therefor what they were fairly and reasonably worth. And this notwithstanding the findings of fact that between January 2, 1897, and January 2, 1898, the defendants' decedent paid the plaintiff the sum of $1,000 in equal quarterly payments, and between January 2, 1898, and January 2, 1904, paid her the sum of $1,500 a year in equal quarterly payments. The referee, however, also found that the payments so made to the plaintiff were not intended by Mr. Hoagland or understood by him or the plaintiff to be or accepted by her in full satisfaction of her claim for the services rendered to him by her as hereinbefore stated. The determination of this question depends upon whether or not this last finding of fact was sustained by the evidence. I have searched this record in vain to find a particle of evidence to justify the referee in making this finding, as there is an entire lack of express evidence as to any agreement in relation to these payments to the plaintiff, or any statement as to the intention of either the decedent when he made them or the plaintiff when she received them. We have the bare fact that the plaintiff entered the employ of and rendered services to the decedent for seven years, and that during that period the decedent made her regular payments which she received and applied to her own use. There is certainly in this nothing to justify a finding that these payments were not intended by the decedent or accepted by the plaintiff in full satisfaction of her claim for services rendered, and the plaintiff does not claim that during that period there was any expression of dissatisfaction as to the amount of the payments to her or request for additional or greater compensation. She rendered services to the decedent for seven years, and from time to time received payments from him which she received and accepted, and there certainly arises under these circumstances a presumption that these regular payments were made and received as compensation for the services rendered.

This rule is stated in 20 Am. & Eng. Enc. of Law (2d Ed.) p. 19, as follows:

"All services rendered by an employé during the period for which he is employed of a nature similar to his regular duties are presumed to be paid for by his salary; and to recover extra pay the servant must overcome this presumption by showing an express agreement therefor."

And a direct authority for this principle is Ross v. Hardin, 79 N. Y. 84. While I do not find any express authority as to the presumption that arises merely from an employment and the subsequent receipt of a salary at regular and stated periods by the employé, reasoning from analogy, it must be that from such facts there is a presumption that the salary or payments were received as full compensation for the services rendered. The burden is therefore upon the party seeking to recover additional compensation of proving that there was an agreement that for the services rendered additional compensation should be paid, or that the obligation of the employé was not fully discharged by the payments made and accepted. In relation to the evidence necessary to establish claims of this character against the estate of a decedent, certain rules have now been established which is stated in Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916, where it is said:

"Thus the evidence relied upon to establish the contract is, first, the testimony of the mother, who tried to swear $100,000 into the pocket of her own child; and, second, the testimony of witnesses who swear to the admissions of a dead man. The former is dangerous, the latter is weak, and neither should be acted upon without great caution. We have repeatedly held that such a contract must not only be certain and definite and founded upon an adequate consideration, but also that it must be established by the clearest and most convincing evidence. We have been emphatic in condemning these agreements, because they 'have become so frequent in recent years as to cause alarm.' We have been rigid and exacting as to the sufficiency of the evidence to establish them, and have condemned the proof thereof 'through parol evidence given by interested witnesses.' As 'such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises,' we have declared that they 'should be in writing, and the writing should be produced, or, if based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses.'"

A short analysis of the testimony given by the plaintiff, and upon which the referee has based his findings of fact, will be sufficient, I think, to establish that the evidence in this case is insufficient to justify a finding that there was ever any understanding or agreement, express or implied, between the plaintiff and the decedent that she should be entitled to receive any compensation for her services except that regularly paid to her. The plaintiff went to live with Mr. Hoagland on the 2d of January, 1897. A witness testified to a conversation with Mr. Hoagland on January 7, 1897, the day of the burial of the decedent's wife, at which he said he did not know what to do; that he could not live alone. The witness then asked him why he did not keep Mary (the plaintiff) with him if things could be planned at her home so that she could leave her mother. And Mr. Hoagland replied: "I can arrange that; [or] I would arrange that." Another witness testified that he called upon Mr. Hoagland at or about the time of the death of his wife, and that the plaintiff was there at the time; that two or three weeks afterwards he again called on the decedent, who, in speaking of the plaintiff, said that she was going to keep house with him, and that he was going to take care of her as long as she lived; that she had given up a position in Dover, and was going to remain with him; and that this statement as to his intentions was subsequently repeated. Another witness testified that she had known the decedent and his wife, hav-

ing apartments next to them at the hotel at which they resided; that the witness saw the plaintiff in the duties of taking care of the very old man, and also saw the plaintiff writing letters for him; that the decedent said that he was keeping the plaintiff at work there as she had a lot to do, and also detailed other work that the plaintiff did for the deceased; that at one time about two months after the death of his wife, when the plaintiff was absent on a visit to her mother, the decedent said, "I did not know what Miss Rose was to me until tonight"; that Miss Rose had done everything in her power for him, and he would not know what to do without her; that he had considered what to do after his wife's death; that there were two nieces, one being Miss Rose and another a woman whose husband had died, and he was thinking of taking the other, but found that that would not do, as she was very blue and would not cheer him up at all; that the reason why he hesitated taking Miss Rose was because he knew she would have to give up her music class, and so considered it in that way, but, of course, he had agreed to look after Miss Rose for giving up her music class and make it good to her; that, "of course, I understand I may live for a long time, and then she could not get back, so I have agreed, as she has given this up, to provide for her so that she will have all that she wants during the rest of her life, and make it up to her in that way." On cross-examination the witness said that his exact words were:

"He said that he was going to provide for her so that she would not have to give music lessons; that she would be independent."

Another witness who was connected with the hotel at which the decedent resided testified that some time after the death of his wife he had asked Mr. Hoagland whether it was his intention to remain in the hotel or whether he had made other plans, to which he replied:

"No, I am going to stay right here. I cannot be as comfortable anywhere else as I am here, and there is no reason why I should go away. * * * I have made arrangements with Mary Rose to give up her position in Jersey and come here to live."

The decedent's physician testified that in speaking of his will and the disposition that he had made of his money he said:

"I have a lot of relatives. * * * And, as for Mary Rose and her mother, they won't spend their income."

To another witness who knew the decedent about two years before his death the decedent said:

"Miss Rose has been an awful good woman for me; in fact, she has done everything that anybody could do for a man left in my position. Probably when I get through I will leave Miss Rose where she can live about as she wants to."

These are all the declarations of the decedent, and the only evidence from which the court is asked to infer that the payments made to the plaintiff were not intended by the decedent or accepted by the plaintiff in full satisfaction of her claim for services rendered to him. They are all incidental declarations made by the decedent when referring to the plaintiff to persons who had no particular interest in

the plaintiff. With one exception they evidently related to the testamentary disposition that the decedent intended to make for the benefit of the plaintiff, and as to that one declaration entirely consistent with the understanding that the payments to the plaintiff were in full compensation for the services that she rendered to him. Clearly it cannot be said that these incidental declarations, made between two and seven years prior to the decedent's death, in which the witnesses had no particular interest in remembering the exact words, is the clear and convincing testimony of the agreement that the law requires. The deceased by his will left the sum of $50,000 in trust, the interest to be paid to Cornelia C. Rose, plaintiff's mother, during her life, and after her death to the plaintiff during her life, with a clause by which the residuary estate should be given to his nephews and nieces, to be divided between them in the proportions which the respective gifts made to them bear to each other. This will was made in November, 1903, shortly before the decedent's death, and certainly must be considered as the final result of his intention towards the plaintiff and her mother. It is entirely consistent with the statement as to his intentions and as to the agreements that he had made, and this provision in his will with the actual payments that he had made to the plaintiff during his life seems to me, upon this evidence, to fully sustain the defense that the plaintiff had been fully paid for the services that she had rendered to the decedent.

It follows, therefore, that this judgment must be reversed as against the weight of evidence, and a new trial ordered before another referee, with costs to the appellants to abide the event.

LAUGHLIN and CLARKE, JJ., concur. PATTERSON, P. J., and HOUGHTON, J., dissent.