(Surrogate's Court, Cattaraugus County.   November 29, 1913.)

1. WORK AND LABOR (§ 7*)—RIGHT TO COMPENSATION—SERVICES BETWEEN PERSONS IN FAMILY RELATION.

Recovery cannot be had for services rendered by one member of a family to another, prompted by mutual obligations and benefits, where there is no specific agreement for compensation, and the attendant circumstances reasonably show that at the time of the services there was no intention to charge for them.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 11½–22; Dec. Dig. § 7.*]

2. WORK AND LABOR (§ 7*) — RIGHT TO COMPENSATION — SERVICES BETWEEN PERSONS IN FAMILY RELATION—BURDEN OF PROOF.

Where the services for which claim is made were rendered by one member of a family to another member, the presumption of a promise to pay therefor is less strong than where the services are between persons not in the family relation, but the burden of proof rests upon the person alleging that the services were gratuitously rendered.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 11½–22; Dec. Dig. § 7.*]

3. WORK AND LABOR (§ 7*)—RIGHT TO COMPENSATION—SERVICES BETWEEN PERSONS IN FAMILY RELATION.

Where a daughter, claiming compensation for her services to her father, introduces evidence sufficient to overcome the inference that such services were gratuitous, she can recover therefor the same as a stranger could.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 11½–22; Dec. Dig. § 7.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. WORK AND LABOR (§ 7*) — RIGHT TO COMPENSATION — SERVICES BETWEEN PERSONS IN FAMILY RELATION.

Where a daughter at the request of her father's other children cared for her father for several years while he gradually became helpless, giving him her personal attention to the great sacrifice of her own interests and pleasure, and without any compensation therefor, there was no such presumption that her services were gratuitous as could deprive her of her right to compensation against her father's estate, over the objection of the other children; there being an absence of that mutuality essential to the existence of the presumption that services rendered between members of the same family are gratuitous.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 11½–22; Dec. Dig. § 7.*]

5. WITNESSES (§ 146*)—COMPETENCY—TRANSACTIONS WITH DECEASED PERSON.

Where the husband testified that prior to the rendition of the services he emancipated his wife, so far concerned her recovery for services rendered to her father, Code Civ. Proc. § 829, relating to evidence as to transactions with the decedent, did not render him incompetent to testify, in support of her claim against her father's estate, as to the nature and extent of her services.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 644–649; Dec. Dig. § 146.*]

6. HUSBAND AND WIFE (§ 208*)—EMANCIPATION—WIFE'S EARNINGS.

A husband may emancipate his wife as to the performance of any particular kind of services, so as to enable her to collect for the same in her own right.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 756, 757, 760–764, 968, 973; Dec. Dig. § 208.*]

In the matter of the estate of George Grogan, deceased. Proceedings upon the disposition of real estate for the payment of debts. Claim of Mary Millholland allowed in full.

Whipple & Whipple, of Salamanca, for administrator and claimant. Nevins & Black, of Salamanca, for contestants.

DAVIE, S. George Grogan, a resident of Salamanca in the county of Cattaraugus, died intestate March 30, 1911, leaving him surviving one son and three daughters, all of full age, his only heirs at law and next of kin. He owned at the time of his decease real estate of the value of about $2,500, but possessed no personal estate aside from a small quantity of household effects. The wife of decedent died intestate in the month of October, 1906. She owned real estate of the value of $3,700. A son-in-law, William Millholland, was appointed administrator of both estates April 8, 1911. There are few debts against the estate of this decedent aside from those sought to be established in this proceeding and which form the basis of the application for the disposition of the decedent's real estate. Two claims are now presented: One by the administrator for the sum of $916.04 for the board of the decedent after the death of his wife, for services rendered by him in the care of decedent during his final illness, and for moneys expended by him for decedent's benefit and at his request. No criticism is made by the contestants as to the merits of the administrator's claim, but it appears that during the entire period covered by the claim he had the use and occupancy of the premises owned by the wife of

the decedent at the time of her death, and in which decedent had an estate as tenant by the curtesy, and it is contended by the contestants that the administrator should be charged, as against his claim, a reasonable rental for the use of such premises. The administrator makes no objection thereto. The evidence shows that the fair rental value of such premises during the period they were so occupied was the sum of $144 per year; the time was $4^{11}/_{26}$ years, making the total rental $636.92, which, being deducted from the claim, leaves the sum of $279.-12 which the administrator is entitled to recover from the estate. The principal controversy relates to the claim of the wife of the administrator, a daughter of the decedent, for services rendered by her during the period above named, in the care and nursing of decedent, to the amount of $1,310.

[1] The contestants offer no evidence controverting the fact of the rendition of such services, their meritorious character, or their value, but base their opposition to the allowance of the claim or any part thereof upon the fact that such services, being performed by a daughter for her father, are presumed to have been gratuitously rendered. It is undoubtedly true that no recovery can be had for services rendered by one member of a family for another member, prompted by mutual obligations and benefits, with no specific agreement for compensation, and where the attendant circumstances, reasonably considered, show that at the time of the rendition of such services there was no design or intention to charge for the same. The general rule governing the disposition of claims of this character is not involved in confusion, nor difficult of comprehension, but serious perplexities often arise when we attempt to apply such rule to the facts of a particular case. For many years the general principles stated in Williams v. Hutchinson, 3 N. Y. 312, 53 Am. Dec. 301, were applied. It is there said:

"A contract or promise to pay, as a matter of course, requires affirmative proof to establish it. Under certain circumstances, when one man labors for another a presumption of fact will arise that the person for whom he labors is to pay him the value of his services. It is a conclusion to which the mind readily comes from a knowledge of the circumstances of the particular case, and the ordinary dealings between man and man. But where the services are rendered between members of the same family, no such presumption will arise. We find other motives than the desire of gain which may prompt the exchange of *mutual benefits between them;* and hence no right of action will accrue to either party, although the services or benefits received may be very valuable. And this does not so much depend upon an implied contract that the services are to be gratuitous as upon the absence of any contract or promise that a reward should be paid."

It will be observed that by virtue of this authority *the burden of showing affirmatively* that the services were not gratuitously rendered is imposed upon the one seeking to recover for such services.

[2] This rule was somewhat materially modified in the more recent case of Moore v. Moore, 3 Abb. Dec. 303. In that case the court says:

"Ordinarily, from the fact of the rendition and acceptance of services" performed, meritorious in "their nature, the law will imply a promise to pay what the services are reasonably worth. This implication may not be repelled wholly by the fact that the service is rendered to a parent by a son of full

age. But the regular presumption of an obligation to pay *is less strong* when the relation of parent and child exists than in the case of dealing between persons not bound to each other. If to the relationship be added other circumstances tending to show, as a matter of fact, that the services were gratuitously rendered, and without any expectation at the time on either side that payment was to be made, the law will not imply a contract for compensation. A person cannot perform services, intending them to be gratuitous, and with a tacit understanding that no pecuniary charge is to be made, and afterwards recover on a quantum meruit for such services."

Under this decision the claimant is not entirely deprived of the benefit of the general presumption arising from the rendition of services by one party and accepted by another, but when such services are rendered by one member of a family to another, the presumption is *less strong*—that is, it requires less proof to overcome—but the burden of making such proof rests upon the one alleging that the services were gratuitously rendered. The case last referred to has been generally followed, and is now regarded as the true principle relating to the disposition of claims of this character. Robinson v. Raynor, 28 N. Y. 497; Davis v. Gallagher, 55 Hun, 593, 9 N. Y. Supp. 11.

[**3**] In the case last cited the court says:

"We do not think it was necessary to entitle the claimant to recover that he should prove an express and definite contract; but that, in the absence of such an agreement, it was incumbent upon him to prove such facts and circumstances as would show an understanding or expectation on the part of the decedent to pay, and on the part of the plaintiff to receive, the value of such services."

The presumption of gratuitous services rendered by members of the same family for the mutual benefit of each other is merely a presumption. This, however, is not proof. A presumption is defined by Best as:

"An inference, affirmative or disaffirmative of the truth or falsity of any proposition of fact, drawn by the process of probable reasoning, in the absence of actual certainty of its truth or falsity, until such certainty can be ascertained." 22 Am. & Eng. Encyc. of Law (2d Ed.) 1234.

If the evidence is of such a character as to overcome the inference that the services were gratuitously rendered, then the claimant is in the same situation as if such services had been rendered by a stranger. Matter of Dailey, 43 Misc. Rep. 552, 89 N. Y. Supp. 538.

[4] The presumption of gratuitous services springs from the existence of mutuality of consideration, reciprocity, privileges, and benefits on the one hand and corresponding duties and obligations on the other. For illustration, a child continuing to abide at the common home, even after arriving at full age, enjoying the benefits of home life, supported and maintained by the head of the household, will not be permitted to recover for services rendered in the maintenance of the common home, however meritorious such services may be, in the absence of an express contract for compensation. There is a substantial and entirely equitable reason for withholding compensation under such circumstances. But in a case where all elements of reciprocity are lacking, where it is simply a matter of labor and services on one hand

without benefit or advantage on the other, no equitable reason exists for disallowing compensation. With these general observations, let us examine the facts relating to the claim in controversy.

As already stated, the decedent left one son and three daughters: The son has a family and home of his own, and is employed by a railroad company. The single daughter, Susie, and the widowed sister, Mrs. Titus, reside at the city of Toledo, Ohio, where they are engaged in business; the other daughter, the claimant, resides with her husband and family at Salamanca. Directly after the mother's funeral, all the children being together, the subject of caring for the decedent was considered. The son and the daughters Susie and Mrs. Titus asserted with distinct finality that they could not care for him, and that, "Mary must care for him." The decedent was 81 years old at the time of his death. Soon after his wife's decease he began losing his eyesight, and during the closing years of his life was entirely blind. He had received a serious injury to his hip, developing into a running sore or ulcer. He was lame and crippled from rheumatic troubles, and in consequence of his infirmities required constant care, attention, and surveillance. For 10 weeks immediately preceeding his death he was confined to his bed, entirely helpless, and as dependent as a babe. His condition during that period was such that he required attendance night and day, and during this entire period of practically four years and a half the claimant watched over and cared for him with the utmost solicitude, foregoing all social functions and absenting herself from home only two days during the entire period, and on those days the husband, obtaining leave of absence from his employment, cared for the decedent. The contestants contributed to no extent whatever in the care or maintenance of the decedent, and very seldom visited him. It would be difficult to conceive of a case more absolutely destitute of every element of reciprocity. The claimant performed this long series of laborious services without receiving a single dollar of compensation, and without the decedent being able to do anything for her. There was no mutuality, no reciprocity of benefits, the advantages were exclusively on the part of the decedent, and the burdens exclusively on the claimant. It would be a travesty on justice and a burlesque on equity to hold that the claimant should be deprived of all relief simply because she was the daughter of the decedent, and in order that such advantage might operate for the benefit of the other heirs in the distribution of the decedent's estate.

Nor is the case destitute of proof showing an expectation on the part of the claimant to be compensated for such services, and expectation on part of the decedent to pay for the same. After the consultation between the children regarding the care of the decedent as above stated, the administrator said to the claimant that they were not able to hire any one to take care of the decedent; that the claim for so doing would be a charge against the estate, and that if she would care for him, she should have whatever she earned in that manner, and on various occasions while such services were being rendered the decedent said to the adminstrator, in presence of the claimant, that he should be well paid; but whether these facts are in

145 N.Y.S.—19

and of themselves sufficient to sustain a finding of an agreement to pay or not I am not concerned, because I base my conclusions in this matter directly upon the theory that the absence of all mutuality in the performance of these services removes this claim from the operation of the presumption invoked by the contestants, and renders the general rule applicable that where meritorious services are rendered by one and accepted by another, the law implies a promise to pay. During the entire period, the services were rendered at the home of the claimant and her husband, all expenses of maintaining the home were sustained by the husband. He paid the rent for the house in which they resided and purchased and paid for all the family necessaries and supplies, and no compensation of any kind or nature, direct or indirect was ever made to the claimant by the decedent for her services.

It may be suggested that the claimant was under a moral obligation at least to care for her father, and to extend to him the same care and treatment that she would have done had the father died leaving no property, but that question is not involved in this case. The father did possess ample means to pay for his care and maintenance, and the only question involved is whether or not the claimant who did everything for her father shall be compelled to share equally in the distribution of his estate with the other heirs, who practically did nothing.

[5] Another question requires examination in this connection. The husband was called as a witness for the claimant, and testified to facts constituting an effectual emancipation of the wife so far as the right to recover for these services is concerned. The arrangement between them to the effect that the claimant should have, in her own right, whatever she might earn in this line was made before the beginning of the rendition of the services. Under such circumstances the husband was interrogated regarding the nature and extent of the claimant's services. This evidence was objected to by the contestants upon the ground that the witness was incompetent, under the provisions of section 829 of the Code of Civil Procedure. If the husband had not surrendered his claim to recover for these services to the wife until after they had been performed, this objection would have been tenable, because the earnings of a married woman in the husband's home in the first instance belong to the husband. Had the wife's title to these earnings been acquired after the performance of the services, she would have derived her title thereto directly by assignment from her husband, and this would have rendered the husband incompetent, but, she having been emancipated as to these services before the rendition, what she so earned was acquired by her in her individual right, and not by assignment from the husband, and he was entirely competent to testify. Lashaw v. Croissant, 88 Hun, 206, 34 N. Y. Supp. 667.

[6] The act of 1884, entitled "an act in relation to the rights and liabilities of married women" (Laws 1884, c. 381) does not contain any provision affecting the common-law right of the husband to the

earnings and services of his wife, when not received or rendered expressly upon her sole and separate account. Holcomb v. Harris, 166 N. Y. 257, 59 N. E. 820. Yet it is always competent for the husband to emancipate his wife in regard to the performance of any particular kind of services, so as to enable her to collect for the same in her own right. The evidence in this case clearly shows that there was a distinct understanding between the claimant and her husband that whatever she should earn through her employment in caring for the decedent should belong to her, and not to the husband. The husband may forego his rights to his wife's earnings, and, unless done in fraud of creditors, the property she acquires with his knowledge and consent, whether within or outside the household, may vest in her. Carver v. Wagner, 51 App. Div. 47, 50, 64 N. Y. Supp. 747; Stokes v. Pease, 79 Hun, 304, 29 N. Y. Supp. 430; Sands v. Sparling, 82 Hun, 401, 31 N. Y. Supp. 251; Lashaw v. Croissant, supra; Birbeck v. Ackroyd, 74 N. Y. 356, 30 Am. Rep. 304; Brooks v. Schwerin, 54 N. Y. 343; Blaechinska v. Howard Mission, 130 N. Y. 497, 29 N. E. 755, 15 L. R. A. 215.

As a result of the foregoing considerations, the claim of the claimant, Mary Millholland, is allowed in full; and the decree to be entered herein will provide accordingly.