In the Matter of the Judicial Settlement of the Estate of HENRY A. HOPLER, Deceased.

Surrogate's Court, Orange County, October 9, 1929.

*Taylor & Royce* [*Herbert B. Royce* of counsel], for the claimant.

*Cuddeback & Jones* [*Edward P. Jones* of counsel], for the administrator c. t. a.

*John W. Ockford,* for certain relatives.

TAYLOR, Spec. S.   Florence E. Van Sickle in her claim presented to the administrator alleges that she performed certain services for the decedent at his home in the village of Pine Bush, N. Y., in that she acted generally as housekeeper between July 1, 1924, and August 16, 1927, and that she is entitled to payment for services as a practical nurse during the decedent's illness.   The administrator presented no proof, relying merely upon the alleged inadequacy of the claimant's proof and his interpretation of the law in regard to the cogency of proof required in cases of this nature.

There was abundant proof by neighbors in position to observe and certain members of the claimant's family that between the dates mentioned the claimant did perform services for the decedent, who was a railroad conductor, in that she went to his house in the early morning around six o'clock and sometimes later, depending upon whether or not the decedent's train was on summer or winter schedule, and that she returned to her own home, where she spent the night, between seven and eight o'clock in the evening and sometimes as late as nine o'clock.   The decedent was a widower and the claimant a widow who resided with her mother and brother. There was abundant proof that the claimant prepared the decedent's meals, did cleaning about the house, washed the dishes, did the baking and mending and that she did the decedent's washing and

ironing at her own home that she might avail herself of a washing machine.

There was no proof of an express contract. Claimant's brother testified to a conversation with the decedent in which the latter stated, in substance, that he did not know how he would have gotten along had it not been for claimant and that he intended to will the real property to her. The decedent's will which was probated left all the property to his wife who predeceased him by a number of years. There was an attempt to have the decedent make a will, but his condition during his last illness precluded it.

There seems to have been an impression among both judges and lawyers that claims against decedents' estates must be established by a higher degree of proof than is required in other civil actions or proceedings, that the rule was something akin to the criminal rule of proof of guilt beyond a reasonable doubt. Reading the older cases without their interpretation by late cases justifies that impression.

This question was squarely before the court in *Mc Keon* v. *Van Slyck* (223 N. Y. 392) for the trial justice charged the jury that claims of this kind are looked upon with suspicion; that a contract of this kind must be proven in all particulars by absolutely disinterested witnesses and established by the clearest and most convincing evidence. This charge was held to be incorrect and with regard to it the court wrote: " In civil cases a plaintiff is never required to prove his case by more than a preponderance of evidence. This is as true of actions against an executor, founded on claims put forward for the first time after the death of the testator, as it is of other actions. (*Lewis* v. *Merritt*, 113 N. Y. 386.) No doubt in determining whether the preponderance exists, the triers of the facts must not forget that death has sealed the lips of the alleged promisor. They may reject evidence in such circumstances which might satisfy them if the promisor were living. They must cast in the balance the evidence offered upon the one side and the opportunities for disproof upon the other. They may, therefore, be properly instructed that to make out a preponderance, the evidence should be clear and convincing. (*Roberge* v. *Bonner*, 185 N. Y. 265). *But all these instructions in last analysis are mere counsels of caution."* (Pp. 397, 398.)

The same rule was thus expressed in *Ward* v. *New York Life Insurance Company* (225 N. Y. 314, 322): " The rule in any civil case is that the plaintiff must establish his claim by a fair preponderance of evidence. He need do no more than this if his claim deals with a dead person; he cannot do less if he is attacking the rights and property of a living person. The general rule as to

weight and quality of evidence is no different in one case than in tho other. In applying the rule and test to specific evidence, however, it very likely will and should occur that the triers of fact will more carefully and critically scrutinize evidence offered against a dead person's estate for the purpose of deciding whether it does make the necessary weight and preponderance of evidence, than would be done if the testimony was offered against one who was alive to contradict it."

In the light of these late expressions by our highest court many of the cases cited by the learned counsel for the administrator are not so far controlling as to require this claim to be disallowed. Many of those cases too have other clear distinguishing features.

In *Rosseau* v. *Rouss* (180 N. Y. 116), cited by the administrator, the court very properly pointed out the weakness of the claimant's testimony in view of the nature of the claim and the other circumstances involved, and it may be doubted in that case that there was any credible evidence to sustain the claim.

*Kearney* v. *McKeon* (85 N. Y. 136, 139) did not lay down any new rules, but turned rather upon the weight of evidence, the fact that the pretended creditor being at sometimes really a debtor and never presenting his claim in reduction of his debt, having considerable weight with the referee who originally heard the case.

It appeared in *Rose* v. *Leask* (124 App. Div. 799), cited by the administrator, that for a long period of time the plaintiff received and accepted payments from the decedent at stated periods, and that element necessarily takes that case out of consideration here.

It would serve no useful purpose to further analyze the large number of cases cited by the administrator other than to say upon examination clear distinguishing features present themselves.

Claimant and decedent were not related and for that reason there can be no claim that the services were intended to be gratuitously rendered, but, on the other hand, it is a logical deduction from the facts and circumstances here that there was at least an expectation on the part of the decedent to pay and the claimant to receive the value of the services rendered. (*Davis* v. *Gallagher*, 55 Hun, 593; *Matter of Grogan*, 82 Misc. 555; *Matter of Sullivan*, 118 id. 58.)

The claim for services as housekeeper is at the rate of sixty dollars per month and for nursing during the last two weeks of the period mentioned at thirty dollars per week. The claim will be allowed with the deduction of ten dollars on account of the last item, because the claimant's own proof is that such services as she rendered were reasonably worth but twenty-five dollars per week.