In the Matter of the Estate of MEDARD ETHIER, Deceased.

Surrogate's Court, Clinton County, January 15, 1932.

*Feinberg & Jerry* [*Benjamin F. Feinberg* of counsel], for claimants Etienne Ethier and Matilda Ethier.

*Boire & Kehoe* [*Victor F. Boire* of counsel], for Peter S. Ethier, objector.

*James B. Stearns,* for Etienne Ethier, sole executor.

HARRINGTON, S. The decedent died testate on March 27, 1931. His will, executed on the day before he died, was duly probated by this court on May 11, 1931. Under the will, his son Etienne Ethier was given a legacy of $500, payable at the rate of $50 per year; a village lot in Rouses Point, N. Y., was given to the son of Etienne; the residuary estate was given to decedent's son, Peter Silas Ethier. Etienne Ethier, one of the claimants, is a son and the sole executor of the decedent's estate. Matilda, the other claimant, is the wife of Etienne Ethier. It appears that the decedent and his wife, Sophia Ethier, both aged persons, came to live with their son, Etienne, on August 27, 1930. For approximately thirteen weeks prior to the date of decedent's death, it appears that he was an invalid suffering with dropsy; that he was a man weighing over 400 pounds, was difficult to care for and required considerable personal care from his daughter-in-law, Matilda Ethier. Etienne Ethier presents a claim against the estate for $30 for food alleged to have been furnished by him at his home for relatives of the decedent who came to attend the funeral. Matilda Ethier presents a claim of $325 against the estate, consisting of two items, one for services for thirteen weeks in caring for the decedent at $10 per week, amounting to $130, and the other for board and lodging of the decedent and his wife, Sophia, for thirteen weeks at $15 per week, amounting to $195.

While these claims would seem to be small, their validity must be established by the same rules of law that are applicable to

larger claims of like nature. The only evidence offered in support of the claim of Etienne Ethier was given by himself. He testified that many of the decedent's relatives came to his home between the date of decedent's death and the date of his burial, and that thirty dollars was the amount he spent for purchases during that period, presumably household supplies. No itemized bill showing the nature of any of such purchases was offered in evidence, nor was testimony given as to the nature of the supplies alleged to have been so purchased or the number of meals served. Under these circumstances this claim is disallowed.

The testimony in behalf of the claim of Matilda Ethier was given by her husband, Etienne Ethier, her mother-in-law, Sophia Ethier, and by a neighbor, Mrs. Clara Gebo. That testimony is as follows: Etienne Ethier: Q. " Did you, after your Father came back to Rouses Point to live with you the last time, hear him say anything to your wife about the pay for taking care of him? " A. " Yes." Q. " When and where was that? " A. " He told my wife, ' if you take care of me, I promise to will you One Thousand Dollars, I am going to die.' " Sophia Ethier. Q. " Did you ever hear your husband say anything to your daughter-in-law about paying her? " A. " He said he was going to give her some money." Q. " Did he say how much? " A. " One Thousand Dollars." Mrs. Clara Gebo: Q. " Did you hear him say anything about paying his daughter-in-law? " A. " Yes." Q. " What did he say? " A. "He said, you work hard on me." " He said, when I die, I will pay you good, that is all I hear." Q. " When was that? " A. " That was two weeks before he died." Q. " In the bedroom downstairs? " A. " Yes." Etienne Ethier recalled: Q. " Who supports the house? " A. " I support the house." Q. " Did you make any claim for board for keeping your Father and Mother? " A. " My wife, she buy everything." Q. " Who gave her the money to buy food? " A. " She buy what she need and I give her money — what she need." Q. " Do you keep any of your own money that you get for working? " A. " I don't." Q. What do you do with your money? " A. " Give it to my wife and she pay the bills." Q. " Your wife runs the house? " A. " Yes." Cross-examination: Q. " You work on the Railroad?" A. " Yes Sir." Q. " And you support your own house don't you, you pay the bills, it is your money? " A. " Yes."

It will be noted from the above-quoted testimony that no mention was made of charging board to the decedent for himself or for his wife, Sophia Ethier. In fact in the first claim filed in this court by Matilda Ethier on May 18, 1931, the same was for services only for thirteen weeks at $25 per week, amounting to

$325. This claim was rejected on December 16, 1931. Thereafter, on December 18, 1931, and only ten days before the hearing in this matter, she filed an amended claim for services rendered the decedent and for board furnished the decedent and his wife, as above stated. This would seem to indicate that the decision of the claimant to make a charge against the estate for board of the decedent and his wife did not occur to her until after she had filed her first claim for services only, and then because she realized that the claim as filed by her was perhaps more than could possibly be allowed under any circumstances for services of the nature so rendered. Furthermore, from the testimony above quoted, there is not sufficient evidence to indicate that the claimant's husband ever agreed with her that she should have the right to charge board to the decedent and his wife. Such an agreement must be established in order to allow a wife to recover upon such a claim. (*Sands* v. *Sparling*, 82 Hun, 401, 402; *Lashaw* v. *Croissant*, 88 id. 206, 207; *Carver* v. *Wagner*, 51 App. Div. 47, 50; *Briggs* v. *Devoe*, 89 id. 115, 118.) In this connection it is significant that while Matilda Ethier presents this claim for board of the decedent and his wife during the decedent's lifetime, immediately upon his death we find claimant's husband, Etienne Ethier, presents a claim for the alleged cost of meals furnished in the house to the relatives of the decedent who came to attend his funeral. This act, in connection with the testimony above quoted on this point, would seem to indicate clearly that Etienne Ethier himself furnished the board for his father and mother and that there never was any agreement between himself and his wife, Matilda Ethier, that any board should be charged to his father and mother either by himself or his wife. In addition to these facts, and in the absence of sufficient testimony to the contrary, is the presumption of law, existing in cases where the relationship of the parties is such as obtains here, that no compensation for such board was contemplated by the parties. (*Matter of Furniss*, 86 App. Div. 96, 100.) The claim of Matilda Ethier for board of the decedent and his wife is, therefore, disallowed.

The most favorable construction of the testimony above quoted is that the decedent promised to pay Matilda Ethier for caring for him by providing for her in his will. Decedent made no such provision. If such an agreement can be properly established, upon failure of performance, the claimant may recover the actual value of the services upon *quantum meruit*. (*Matter of Otis*, 126 Misc. 741, 744, and cases cited.) In *Matter of Otis* (*supra*) I had occasion to consider the many rules of law applicable in cases of this kind. Among others, is the rule requiring claimant to prove

his or her case by a fair preponderance of the evidence only; but to comply with such rule oral declarations of an intention to bequeath one's estate to another ought not to be held sufficient indication that such a contract existed, unless such declarations are corroborated in all substantial particulars by disinterested witnesses. (*Hamlin* v. *Stevens*, 177 N. Y. 39, 50; *McKeon* v. *Van Slyck*, 223 id. 392.)

Have the requirements of this very proper rule been met in this case? The testimony of Etienne Ethier and Sophia Ethier in support of Matilda Ethier's claim for services cannot be said to be that of disinterested witnesses. However, such testimony is corroborated by that of Mrs. Clara Gebo, except as to the amount of compensation alleged by the other witnesses as having been agreed upon by the decedent. This might be accounted for by the difference in time when these alleged declarations of the decedent were made. At the time decedent is alleged to have made the first statement regarding this matter in the presence of his son, his wife and this claimant, he might have believed he was due for a long period of illness and for this reason felt that it would be worth $1,000 to have claimant care for him properly. At the time of his alleged declaration upon this mattert o Mrs. Gebo, he may have realized that the period of his illness would be short, or he may not have had, at that time, an exact idea of the sum which he proposed to pay the claimant for her services. In any event, there is no basis for disbelieving the testimony of Mrs. Gebo on this point. She was a near neighbor of the claimant and her frequent visits to the home of the claimant would seem quite natural under the circumstances. Upon such visits it is quite logical to assume that she would observe the work which the claimant did for decedent, and that decedent would discuss this matter with Mrs. Gebo. Furthermore, this is not the ordinary case of a near relative becoming a member of one's family without requiring extra work on the part of the housewife. Decedent weighed over 400 pounds. His illness was such as required much time of the claimant during the period covered by her claim for services. For these reasons, I believe a proper basis has been shown for allowing Matilda Ethier's claim for services rendered the decedent during the period when he was confined to his bed. The testimony of disinterested witnesses establishes to the satisfaction of this court that the reasonable value of claimant's services during this period was ten dollars per week. While there is no evidence of an express agreement between claimant and her husband that she should be entitled to recover for her services, he was present at the time the decedent promised to pay the claimant

for her services and has not made and does not now make any claim to the same, but on the contrary testified in support of his wife's claim. Such action on his part is sufficient to constitute an implied consent to her to recover on her own behalf for the services thus rendered. (*Minehan* v. *Hill,* 144 App. Div. [3d Dept.] 854, 859.)

The claim of Matilda Ethier for services rendered to the decedent for thirteen weeks at $10 per week, amounting to $130, is, therefore, allowed, together with costs of $35, and taxable disbursements payable out of the estate.

Prepare decree accordingly.