494

IN RE ESTATE OF THOMAS M. TILGHMAN.
LETHA F. OLSON v. VIVIAN TILGHMAN.[1]

December 18, 1953.

No. 36,123.

*Robert E. Debel,* for appellant.
*Baker & Carlson,* for respondent.

NELSON, JUSTICE.

This case comes before us on appeal from a judgment entered in the district court affirming an order of the probate court disallowing a claim against decedent's estate.

This case calls for a recital of facts and circumstances. Those of importance disclosed by the record are as follows:

Thomas M. Tilghman, a resident of Canby in Yellow Medicine county, died on November 30, 1950. He was the father of Letha F. Olson, the claimant in this proceeding. Her mother died when she was a child of 16 months, after which she was taken to live with

[1]Reported in 61 N. W. (2d) 743.

an aunt and later with grandparents at Williams, Iowa. She graduated from high school; went to work for a doctor in West Sioux City, Iowa, for a year; took training as a nurse for six months in Cleveland, Ohio; and married Coney Olson, her present husband, in 1918. Since that date she and her husband have lived on their own farm homes in a township of Yellow Medicine county. She never lived in her father's home after reaching the age of 16 months. There is nothing in the record to disclose that the father thereafter either supported or cared for her as his child. Neither lived in the home of the other for a period of more than 50 years following the mother's death.

On October 3, 1947, Thomas M. Tilghman, the father, was living alone in Canby in an apartment owned by one Bob Fassbender. He suffered a stroke on that date. His daughter, Letha F. Olson, the claimant here, was notified of his illness at her home in the early morning by Mr. Fassbender and came to Canby at 6:30 the same morning. She stayed and cared for him until October 28, 1947, at which time she had him removed to her home and that of her husband on the farm 18 miles from Canby. She cared for him in her family home for nearly three years until she was forced to go to Rochester, Minnesota, for an operation, in August 1950. She was unable to perform any services for him from that time until his death November 30, 1950. Her father, prior to suffering a stroke in 1947, had suffered a heart attack in 1938 and for several years had been afflicted with palsy. After the stroke he remained infirm and was paralyzed to some extent on his left side; he continued to be afflicted with palsy, suffered from a bleeding hemorrhoid, was unable to do anything for himself to the extent that while not bedridden he had to be bathed, given enemas, dressed at least partially, and assisted at his meals. The record discloses that he was a patient with many ailments who had to be cared for daily during his entire stay in his daughter's home.

There is nothing in the record by way of testimony or statements that would tend to establish an express agreement to pay for support furnished or labor and services rendered during the period from October 3, 1947, to August 1950.

This case was tried before the court and was disposed of upon objector's motion for judgment in his favor, made at the close of the testimony, on the ground that claimant had wholly failed to establish any cause of action or basis for her claim against the estate in any amount. The basis for the motion was that, since the claimant and the decedent stood in the relationship of father and daughter, there was a presumption that the services rendered were gratuitous and there was no evidence of any agreement, express or implied, to overcome the presumption. The motion was not based on any claim that a *family relation* gave rise to a presumption of gratuity; the claim only asserted the kinship of the claimant and her father. The motion was granted.

The rule generally stated is (absent the family relation) that, where one renders services for another which are known to and accepted by the other, the law implies a promise to pay therefor. Where, however, the party served is a member of the family of the person serving, a presumption arises that such services are gratuitous.

The presumption of gratuity is dependent on the existence of a family relation and only arises when it is shown that the services rendered were of the type which members of a family usually and ordinarily render to each other by reason of the family relation. The authorities stress the fact that the presence of those reciprocal duties within the family is essential to the creation of this presumption. As stated in 71 C. J., Work and Labor, § 25:

"* * * The presumption of gratuity finds its foundation in the reciprocal character of family duties and services, and where the services and duties between members of a family are so disproportionate as not to be in any true sense reciprocal, the presumption of gratuity does not apply and the one who has borne the greater burden may be entitled to recover compensation."

In Minnesota a statement of the general rule regarding relatives living together as members of the same household has been laid down in Beneke v. Beneke, 119 Minn. 441, 445, 138 N. W. 689, 691, and cases cited therein, as follows:

" 'The general rule deducible from the authorities is that, where a child after arriving at majority continues. to reside as a member of the family with a parent, or with one who stands in the relation of a parent * * * the presumption is that no payment is expected for services rendered or support furnished by the one to the other. This presumption is not, however, conclusive, and may be overcome by proof either of an express agreement to pay, or of such facts and circumstances as show satisfactorily that both parties at the time expected payment to be made,' * * *.''

See, In re Estate of Anderson, 157 Minn. 217, 197 N. W. 671, 202 N. W. 904.

While it is true as an abstract proposition that when the recipient of services is a member of the family a presumption arises that such services are gratuitous, it does not necessarily follow that one who comes into the family of his child through the necessity of circumstances while wholly incapable of rendering reciprocal services, enters the family with no intention to make compensation for care and support received, particularly where he is financially capable of maintaining himself and supplying his wants. It does not appear that the decedent here did any work or that any work was exacted of him. There were no reciprocal services exacted, rendered, nor was he capable of rendering reciprocal services in even the slightest degree during the time he remained with the claimant. These facts must be considered in determining whether the family relation on which the presumption rests in fact exists and, if it does, in determining whether the facts are sufficient to overcome a presumption.

It must be emphasized that the existence of the presumption depends on the presence of a family relation not blood relationship alone. A family has been defined as a collection or collective body of persons, not necessarily related, but living under one roof and under one head or management. Although such relationship is not always controlling, it is a major factor in determining the intent of the parties. See, Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855.

In the case of Page v. Page, 73 N. H. 305, 307, 61 A. 356, 358, under a somewhat similar state of facts and circumstances, the court said:

"The principal contention on the part of the defendant is, that the presumption that the plaintiff's services were gratuitously rendered arises as a matter of law from the blood relationship of parent and child, although they were not members of the same household. So far as appears from the case, the two families were as distinct, the one from the other, as those of strangers. The fact that the same roof sheltered them does not seem to be important; certainly it is not decisive upon the question whether the family relation existed between the parties. If the plaintiff had been a stranger, it would not probably be claimed that he and the defendant's intestate were members of the same family. The question, therefore, is whether when a son, who is the head of a family wholly distinct from his parent's family, renders services to his parent, there is a legal presumption that they were regarded by the parties as gratuitous favors. If the doctrine is not based upon the consanguinity of the parties, but upon the community of interest usually found to exist between members of the same family, the question must be answered in the negative. * * * the decisions on the general proposition seem to be based on the idea of the mutuality of the benefits rendered and received by the members of a single family."

That court then reached the conclusion that the presumption that services rendered by a child to a parent were intended to be gratuitous arises from the fact that the parties were members of the same immediate household and not from mere propinquity of kindred and that a son who renders valuable services to his mother is entitled to recover therefor on an implied assumpsit when it appears that he was the head of a household wholly distinct from that of the parent.

The presumption of gratuitous services rendered by members of the same family for the mutual benefit of each other is merely a presumption and not proof. A "presumption" is defined as follows in Black, Law Dictionary (4 ed.) 1349:

"An inference affirmative or disaffirmative of the truth or falsehood of any proposition or fact drawn by a process of probable reasoning in the absence of actual certainty of its truth or falsehood, or until such certainty can be ascertained."

If the evidence is of such a character as to overcome the inference that the services were gratuitously rendered, then the claimant is in the same situation as if such services had been rendered by a stranger. Matter of Grogan, 82 Misc. 555, 145 N. Y. S. 285. The intent to pay may be inferred from facts tending to negative the presumption that they were rendered and accepted as a gratuity. Snyder v. Nixon, 188 Iowa 779, 176 N. W. 808; In re Estate of Bishop, 130 Iowa 250, 106 N. W. 637; Marietta v. Marietta, 90 Iowa 201, 57 N. W. 708; In re Estate of Squire, 168 Iowa 597, 150 N. W. 706.

In this case, however, we are not concerned with the question whether the presumption of gratuity has been overcome, but rather with the question whether the presumption in fact arises in view of the absence of any showing of family relation. In In re Estate of Johnson, 170 Minn. 451, 453, 212 N. W. 815, this court made the following comment after referring to the general rule set out in In re Estate of Klessig, 153 Minn. 27, 189 N. W. 424, and In re Estate of Havenmaier, 163 Minn. 218, 203 N. W. 958:

"* * * However, in this case, the trial court held, and we think properly, *that such a presumption did not obtain* but submitted the question whether there was an implied promise to compensate the daughter for her work to the jury which, by their verdict, found that there was such a contract." (Italics supplied.)

Plaintiff's right to recover is dependent upon all the facts and all the circumstances surrounding the relationship as it exists here; the manner in which services were performed and support furnished; and under what conditions, if any, mutual benefits and reciprocal duties are shown to exist or not to exist. If there was no interchange of reciprocal duties and mutual benefits, the presumption against payment would not obtain. If the presumption against payment does not obtain, then the general rule applies, and

the claimant is in the same situation as if such services had been rendered by a stranger and the presumption of payment would be in her favor. We believe that the presumption against payment does not obtain here and that the general rule last stated applies. Of course, in order to be entitled to recover the value of his services, a claimant must prove such value. 58 Am. Jur., Work and Labor, § 62.

Where all elements of reciprocity are lacking and it is simply a matter of furnishing support and rendering labor and services without benefit or advantage, we have a situation in which no equitable reason exists for disallowing compensation. The presumption of gratuity can only be properly indulged where the parties lived together under such circumstances that it may be rightfully assumed that mutual services are to be rendered. It should not be indulged when the circumstances of the parties are such as to preclude such an assumption or clearly to show that one of the parties is incapable of performing any of the reciprocal duties arising out of the family relation. Henry v. Knight, 74 Ind. App. 562, 122 N. E. 675. It does not seem to us that it can be successfully urged, under the facts and circumstances which the instant case presents, that the existence of the family relation was established and maintained between the claimant and her father after the removal of the latter from his apartment home at Canby to the home of the former on the farm, suffering from several illnesses and incapacitated as he was and continued to be until the time of his death. Any other rule applied to the facts and circumstances which the instant case presents would be harsh and unjust.

The facts and circumstances clearly show that decedent was a burden on the labor and resources of the claimant and preclude the presumption of voluntary service because of the family relation. They lead to the conclusion that the claimant assumed the burden of supporting her ailing father after a lapse of more than 50 years, a period during which there were none of the mutual services and reciprocal duties necessary to establish the family relation, under a moral compulsion arising from a sense of duty. This was not only

highly commendable but was wholly consistent with an intention to exact payment therefor from the one whose obligations she had discharged. See, Henry v. Knight, *supra;* Matter of Grogan, *supra.*

It would appear that the trial court granted the motion for judgment in this case, even in the face of the facts and circumstances, because nearly all the cases bearing upon this point heretofore decided by this court had applied the abstract general rule. An exception was In re Estate of Johnson, 170 Minn. 451, 212 N. W. 815. In that case there was recovery below and an affirmance by this court with the comment that the trial court correctly held that the presumption against payment did not obtain. This case now before us, with its unusual facts and circumstances, does not appear to come under the abstract general rule applicable to family relation in the decisions of this jurisdiction.

We base our conclusions in determining this matter clearly upon the theory that the facts and circumstances establish an absence of all mutuality in performance thus removing the claim from the operation of the presumption relied upon by the respondent and rendering applicable the general rule that, where meritorious services have been rendered by one and accepted by another, the law implies a promise to pay.

The judgment is reversed, and the case remanded for a new trial in accordance with the rules announced herein.

Reversed.