In the Matter of the Judicial Settlement of the Accounts of BRIDGET O'NEILL, as Administratrix of CATHERINE NOLAN, Deceased.

BRIDGET O'NEILL, Claimant, Appellant; DENNIS McDONALD and Others, Respondents.

*Claim against a decedent's estate for services — what statements by the decedent do not create an obligation to pay therefor.*

A claim made by an administratrix against the estate of her decedent "for the board and lodging and other expenses connected with the care of the deceased," was supported by the testimony of the administratrix's daughter, to the effect that the decedent, who was the administratrix's aunt, had lived with the latter for seventeen or eighteen weeks, during which time the administratrix and the witness acted as nurses to the deceased, cooked and sometimes furnished provisions for her, and that when the deceased was sick the administratrix would do anything she wanted done. The witness also testified that at various times the deceased stated that the administratrix "could do the work for her and whatever she had when she was dead would be hers;" that the decedent had also made the following statements to the administratrix at various times: "Everything that belongs to me will be yours bye and bye;" "all the money I have will be yours;" "you will be well paid when I am dead;" "you will get all the money when I am dead."

*Held,* that a finding by the referee, to whom the claim was referred, that the claim was not proved, should not be disturbed;

That the statements made by the decedent did not create an obligation to pay, but merely expressed the decedent's understanding that upon her death the administratrix would acquire enough to compensate her.

APPEAL by the claimant, Bridget O'Neill, from an order of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 21st day of April, 1899, overruling and dismissing the objections filed by her to the report of a referee which disallowed a claim of the administratrix against the estate of the decedent and settled the accounts, and confirming said report.

*J. Delahunty,* for the appellant.

*Carl A. Hansmann,* for the respondents.

INGRAHAM, J.:

Letters of administration were issued to Bridget O'Neill upon the estate of Catherine Nolan, deceased, and upon a settlement of her accounts as such administratrix she made a claim against the estate

for $706 " for the board and lodging and other expenses connected with the care of the deceased." The next of kin of the deceased objected to the allowance of this claim, and the accounts and objections were referred to a referee to examine the accounts and to determine the validity of the claim of the administratrix against the estate. The referee took the testimony and reported against said claim, and that the same should be dismissed. The administratrix excepted to such finding; the surrogate overruled the exceptions to the report of the referee, disallowed the claim and confirmed the report, and from the decree of the surrogate the administratrix appeals.

The claim was sought to be sustained by the testimony of a daughter of the administratrix who is the claimant. This witness testified that the deceased, who was the claimant's aunt, had lived with the claimant seventeen or eighteen weeks, and that during that time she (the deceased) was quite feeble ; that for nearly five years before the death of the deceased she had never done any work; that the claimant used to go to deceased's house three or four times a week ; that when the claimant did not ·go the witness went in her place ; that during the period of seventeen or eighteen weeks, from December, 1890, to May, 1891, the mother and daughter acted as nurses to the deceased, cooked for her and sometimes furnished provisions for her ; that during this period none of the other relatives of the deceased visited her ; that as far back as the witness could remember the claimant and the deceased visited each other frequently; that whenever the deceased was sick the claimant would go to see her, and would do anything she wanted done, and that when the claimant was sick the deceased would come in and help her. The witness further testified as to conversations between the claimant and the deceased. The first conversation she fixed as the time when the deceased had the grip in 1890, in which the deceased stated to the claimant that " everything that belongs to me will be yours bye and bye;" that " all the money I have will be yours;" that the witness heard many such conversations between the claimant and the deceased; that the deceased would say, " Well, you can afford to do it, because you will be well paid when I am dead," and when the claimant would scold her for not keeping the towels clean, she would say, " Well, what harm is it? You will get all the money

when I am dead;" that the witness heard the deceased say many times that "she could do the work for her and whatever she had when she was dead would be hers; I heard her ever so many times say that;" that the witness remembered her saying from the beginning "that she would pay my mother for what she was doing and what I was doing for her, and that whatever she had when she died was my mother's, for this work she was doing." Upon this evidence the referee found that the claim was not proven, and we do not feel at liberty to overrule this finding.

While it is possible that a finding of the referee that the claim was proved would not be disturbed, we cannot say, considering the relation of this witness to the claimant and the surrounding circumstances, that a contract to pay for services performed was proved in such a way as to justify a reversal of the finding of the referee. The only witness to the alleged conversations was the daughter of the claimant. The relationship of the parties was such that it cannot be said she occupied the position of an entirely disinterested witness. No particular time is fixed at which those conversations took place, and it is quite clear that they were general in character without relation to any particular service that was rendered, and presented generally the conclusion as to what would happen upon the deceased's death, rather than an express promise to pay for the services at the time they were rendered, or at any particular time. These statements might well refer to the fact that the claimant, as one of the next of kin of the decedent, would be entitled to her estate, and that what she would get in that capacity would pay her for all the services that she rendered, rather than any distinct promise for payment for the services rendered. It is quite clear that the idea expressed was that it was what the claimant would get upon the death of the decedent that would compensate her, not that any obligation to pay was created. Nor was there any agreement to make a will, or to provide for payment by a will, or to do any act by which the deceased would put the claimant in possession of all her property. It might be, and the general result of the conversations would tend to show, that in some way the deceased understood that the law would give to the claimant her property; but that was quite different from a distinct agreement to make a will or other disposition of her property in favor of the claimant. Under the

circumstances, and considering the kind of proof that is required to establish a claim by a personal representative of an estate against the estate, we think that the finding of the referee that this claim was not satisfactorily proven was justified.

It follows that the decree appealed from must be affirmed, with costs.

VAN BRUNT, P. J., BARRETT, RUMSEY and O'BRIEN, JJ., concurred.

Decree affirmed, with costs.