(110 App. Div. 220.)

## LUCAS v. BOSS et al.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. WORK AND LABOR—EFFECT OF EXPRESS CONTRACT.

　　Where one rendering service as a nurse received a certain weekly compensation, no promise to pay the reasonable value in excess of such compensation could be implied.

　　[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Work and Labor, § 28.]

2. EXECUTORS AND ADMINISTRATORS—ACTION AGAINST ESTATE—PROOF REQUIRED.

> In an action against the estate of a decedent on a contract with him, the contract must not only be certain and definite, and founded upon an adequate consideration, but must be established by the clearest and most convincing evidence.

> [Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 903½, 1872, 1873; vol. 50, Cent. Dig. Work and Labor, § 55.]

Appeal from Trial Term, New York County.

Action by Mary Lucas against J. Fred Boss and others, as executors of Philip Diehl, deceased. From a judgment in favor of plaintiff and from an order denying a new trial, defendants appeal. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Wm. L. Mathot, for appellants.

G. Murray Hulbert, for respondent.

INGRAHAM, J. The complaint alleges that between the 18th day of December, 1897, and the 20th day of May, 1901, plaintiff at the special instance and request of Philip Diehl, then living, performed certain services as nurse to Marguerite Diehl, the wife of the said Philip Diehl, at the agreed price and at a fair and reasonable value of $20 per week during said period, which the said Philip Diehl promised and agreed to pay, and that no part or portion thereof has since been paid, except the sum of $480 on account thereof, leaving a balance due to the plaintiff of $3,040.

There is no allegation that the plaintiff was employed by the defendant's testator or that she rendered him any services. She alleges that for the services that she rendered to the defendant's testator's wife he promised and agreed to pay. He died on the 18th day of December, 1903, something over two years after the plaintiff's services terminated. The plaintiff was called as a witness, and testified that prior to December 1, 1897, she had been employed as a domestic servant, receiving $18 per month; that about the 5th of December, 1897, she went to live with her aunt "because she was broken down"; that this aunt was Marguerite Diehl, the wife of the defendant's testator; that while she was living with her aunt, the aunt had a paralytic stroke, and became perfectly helpless. At this point it was conceded by defendant's counsel that:

"The plaintiff cared for the wife of the defendant's testator, Margaret Diehl, from the 12th day of December, 1897, up to the 18th day of May, 1901, and that during that time she rendered such services as were required of her, more particularly by way of washing and dressing said Margaret Diehl; giving her her medicine; giving her massage treatments four hours per day, two in the morning and two at night, and electrical treatments; attending her generally; taking her out on days when she could be taken out in a wheeled chair; accompanying her to the country and remaining there her constant attendant, as she had been in the city; sleeping in the same room with the invalid during the night, in order to be ready to render such services as the invalid might require during the night."

Whereupon the counsel for the plaintiff stated:

"We do not sue on any specific contract. We claim that the services are reasonably worth the amount charged in the bill which was served."

97 N.Y.S.—8

There was introduced in evidence by defendant a letter, written by the plaintiff to the defendant's testator and his wife, dated November 15, 1901, informing them that she had been married on November 3d. and stating:

"Now I would like to ask for the $12, which I have worked for, and which are due to me by right. It is not right that you hold back this money from me. If I had received as much money as I earned and what you now pay for a nurse, I would have a thousand dollars in the bank as good as a cent. Think over the matter, and you must yourself say that I am right. You can send me a check for the money. That is the least trouble. If others receive $100 for a present, I should at least receive that for which I have worked, notwithstanding much has always been promised me."

Plaintiff's brother testified: That in December, 1897, he learned of his aunt's illness. That he had a conversation at that time with the defendant's testator with respect to the plaintiff remaining in his household. That he told his uncle:

"I don't like the idea of my sister coming here and staying with you, as she can get better wages when she works outside for strangers, and she will have more liberty. And then I said: 'Another thing, it might make bad friends in the family.' And my uncle says: 'You don't need to be afraid of that. I want your sister here. She is the only person who suits me and attends to your aunt. * * * Don't be worried. I will provide for her in the will."

He further testified that the last conversation he had with the defendant's testator was shortly before his sister left his uncle; that his uncle, sister, and aunt were present; that the plaintiff's testator said that he did not want the plaintiff to go and leave the place. Witness said:

"Uncle, look at that girl. I says: 'Look how that girl looks.' I says: 'That girl is sick.' I said: 'I can't see it, she must go away.' And he says to me, 'John,' he says, 'Marie is well provided for. Let her stay here.' I says: 'No, she can't. She is sick.'"

A physician who attended the plaintiff's aunt testified, in answer to a hypothetical question, assuming that the plaintiff rendered the services specified, that the reasonable value of the services was at least $25 per week; that was the usual compensation paid to trained nurses. Another witness testified: That she was the wife of a relative of the defendant's testator. That she first met him in 1898. That after the plaintiff left his house she had a conversation with him with respect to the plaintiff's leaving, and that he said:

"Marie ought not to have left. He would make everything all right with her if she only stayed, that he would remember her in the will. Her wages, he knew, was not very much for the work she done; but he would have made it all right in the will, and she was down in the will for it if she only would not have left."

Another physician, who attended the defendant's testator's wife, testified that the plaintiff's services were reasonably worth $25 per week; that he had conversations with the defendant's testator at different times; that he had said that:

"Marie [meaning the plaintiff] was a niece of his wife, and they had no children, and whatever they had when they died Marie would get all. He said that she was a good girl and everything was going to her when he died."

That when Marie left the house of her uncle she was run down and unable to work any more. Upon this evidence the plaintiff rested, and the defendants moved to dismiss the complaint. This motion was denied, and the defendant excepted.

There is no direct evidence of any promise of the defendant's testator to pay for the services that the plaintiff rendered, nor could a promise to pay be implied from the mere rendition of services of a greater amount than the person rendering the services received when it was rendered. The only statement that was made by the defendant's testator, and which tends to prove any promise, was that made to the plaintiff's brother that the defendant's testator would provide for the plaintiff in his will. Just what that provision was to be was not stated. It was a statement of a benefit that would accrue to the plaintiff if she remained in his service, and such a promise was too indefinite to be enforced. The other statement made to the plaintiff's brother was at the time that the plaintiff terminated her service, and that was a promise to make provision for the plaintiff if the plaintiff remained with him. That, however, she refused to do. The other declarations of the defendant's testator proved were simply statements of an intention to make testamentary provisions in favor of the plaintiff, and contained no promise. The testator did make a provision for the plaintiff in his will, but that provision was merely nominal and not satisfactory to her. By giving this evidence all the weight that could be given to it, here is nothing more than a promise that, if the plaintiff remained in the defendant's testator's employ, he would provide for her in his will; that she refused to remain, and left against his protest, and he failed to make a satisfactory provision for her. It is difficult to see how there could be inferred from this testimony any promise to pay this plaintiff any sum in addition to that which she had received, and which is evident was the sum that the plaintiff was willing to and did accept for the services that she rendered. But this claim is made against an estate of a dead man for services that ended more than two years before his death, for which no claim was made during his life.

The rule to be applied in determining actions of this character against the estate of a decedent has been many times stated by the Court of Appeals; the latest expression being in the case of Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916, where it was said:

"We have repeatedly held that such a contract must not only be certain and definite, and founded upon an adequate consideration, but also that it must be established by the clearest and most convincing evidence. We have been emphatic in condemning these agreements, because they 'have become so frequent in recent years as to cause alarm.' We have been rigid and exacting as to the sufficiency of the evidence to establish them, and have condemned the proof thereof 'through parol evidence given by interested witnesses.' As 'such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises,' we have declared 'that they should be in writing, and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses.' "

It must be apparent that this evidence fails to comply with these conditions. There is no direct evidence of any promise to pay the

plaintiff any sum of money. There is no implied promise to pay more than she had accepted as the proper compensation for the value of her services, and in the letter she wrote to the defendant's testator before his death she stated the claim that she had against him, and that was for one month's wages at the rate of compensation she had before received. No other claim was made until after his death; no indication that she claimed that money was due her other than the amount she claimed for one month's wages. This claim is evidently based upon her disappointment in not receiving a substantial legacy in his will, but I do not think that the evidence justifies a finding that there was any contract to make a will in the plaintiff's favor, as all that was stated was that the defendant's testator intended to make some provisions for the plaintiff in his will, and, if any contract for a legacy could be implied, it was upon the condition that the plaintiff should remain with him so long as he required her services. That she refused to do. The evidence of any agreement, instead of being proved by substantial and convincing evidence, is sought to be established by incidental conversations not in any form of a contract or agreement, but stating an intention as to the testamentary disposition of the testator's property.

While in many cases it was quite proper for the trial judge to submit questions of fact to the jury when there is any evidence to sustain a verdict, after the verdict is rendered it is the duty of the trial judge to consider whether the verdict is not against the weight of evidence, and, if that clearly appears, it is his duty to set aside the verdict and order a new trial. In actions against the estate of a decedent the trial judge should consider the evidence in the light of the rule established by the Court of Appeals which have been referred to; and, unless the evidence comes up to the standard indicated, the trial judge should not hesitate in setting aside the verdict. And this we think the learned trial judge should have done in this case, for in no aspect of the case can it be said that the verdict was sustained by the evidence.

It follows, therefore, that the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.