JOSEPHINE KENNY, Respondent, *v.* EDWARD M. CARROLL, as Administrator, etc., of MARIA KELLY, Deceased, Appellant.

First Department, January 25, 1924.

Executors and administrators — action on oral contract between defendant's intestate and parents of plaintiff — alleged contract provided that testatrix would give all her property to plaintiff if plaintiff would live with her — plaintiff lived with testatrix — evidence does not show existence of contract.

In an action on a contract alleged to have been made by the defendant's testatrix with the parents of the plaintiff whereby the intestate agreed to leave all her property to the plaintiff if the plaintiff, then a girl of about eight years of age, would live with the intestate during the latter's life, the evidence, though it appears that the plaintiff did live with the intestate does not show the existence of the contract but indicates that the alleged contract was an after-thought on the part of the plaintiff.

APPEAL by the defendant, Edward M. Carroll, as administrator, etc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of December, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 5th day of January, 1922, denying the defendant's motion for a new trial made upon the minutes.

*S. G. Nissenson,* for the appellant.

*James O. Trybom* [*William F. Lally* of counsel; *Leonard F. Fish* with him on the brief], for the respondent.

SMITH, J.:

The action is based on an oral contract alleged to have been made by the defendant's intestate in September, 1898, with the parents of the plaintiff, whereby it is claimed the deceased agreed to leave all of her property to the plaintiff. The plaintiff at that time was a girl of about eight years of age and had lived with the deceased practically all her life, except for about thirteen months spent on a trip to Ireland with her mother, who was a niece of the deceased. The claim of the plaintiff is that upon her return from Ireland in September, 1898, the deceased agreed with the father and mother of the plaintiff that if they would allow the plaintiff to live with the deceased as her daughter she would upon her death leave all her property to the plaintiff. There is some proof that the deceased desired to adopt the plaintiff but that the parents were not willing to have her do so, but did agree to have the plaintiff live with the deceased as her daughter. This the plaintiff did and remained with the deceased for about twenty years, until her death in 1918.

The proof of the plaintiff consisted of testimony of a paternal uncle of the plaintiff that the deceased said to plaintiff and to the parents of the plaintiff in September, 1898, that if Josephine was to stay with her and live with her everything that she had would be hers eventually; that the plaintiff's parents said that the plaintiff could go and live with the deceased. There was further proof that the plaintiff did live with the deceased from that time until her death in 1918; that the deceased said many times that all she had was to be the plaintiff's. The plaintiff attempted to prove by the parents what was said by the deceased at the time in September, 1898, above referred to, but this was ruled out by the trial court on the authority of *Rosseau* v. *Rouss* (180 N. Y. 116).

On the other hand, the appellant claimed, and now claims, that the plaintiff had at different times taken a position entirely inconsistent with her claim of the existence of the contract now sued on and on which she has been permitted to recover.

Mrs. Kelly died April 6, 1918, not leaving any will. She left about $6,000, almost entirely in three savings banks. At the time of her death the plaintiff had possession of the bank books representing the above. On July 25, 1918, the defendant was appointed administrator of the property of Mrs. Kelly, and when he learned that plaintiff had possession of those bank books demanded that

they be delivered to him.    Upon the refusal of plaintiff this defendant commenced two actions against the plaintiff to recover the bank books.    Just when those actions were commenced does not appear, nor does it appear just when plaintiff's answers, offered in evidence, were served.    It does appear, however, that a certain stipulation was entered into on November 12, 1918, and that a bill of particulars of plaintiff's defense in those actions was dated November 21, 1918.    In the answers above mentioned plaintiff made no mention of the agreement sued on in this action.    She based her defense on the right to keep the bank books because of a gift to her about December 6, 1915, and set up the existence of an oral agreement with the deceased when the plaintiff was about sixteen years old that the deceased would give her all she possessed. The plaintiff was sixteen years of age in 1906.    These actions were finally disposed of by the plaintiff delivering the bank books to the administrator.

After the death of Mrs. Kelly and before the commencement of the above actions the plaintiff had requested the different heirs of Mrs. Kelly to sign off any interest they might have in her estate.    Some of the heirs did so and some of them refused.    In the negotiations to accomplish this it is claimed that the plaintiff made certain intentional misrepresentations, which are not very material, but it does not appear that plaintiff at any time during the negotiations mentioned the agreement set out in the complaint herein.

The plaintiff herein presented to the administrator of Mrs. Kelly a claim to the sum of $6,000, verified December 27, 1918, which was refused January 15, 1919, whereupon plaintiff commenced this action.    In the above claim and in the complaint in this action the contract sued on is mentioned for the first time.

In the case of *Ennis* v. *Chichester* (187 App. Div. 53) Presiding Justice CLARKE wrote an opinion in which he collated the cases expressing certain rules as to the weight of evidence in reference to a similar contract.    That case was affirmed (227 N. Y. 663). While the statement of the old rule as to the weight of evidence to establish these contracts laid down in a number of cases, among others *White* v. *Devendorf* (127 App. Div. 791); *Holt* v. *Tuite* (188 N. Y. 17); *Shakespeare* v. *Markham* (72 id. 403), has been to an extent modified by the Court of Appeals (See, also, *McKeon* v. *Van Slyck*, 223 id. 392; *Ward* v. *New York Life Ins. Co.*, 225 id. 322), nevertheless, the court has not laid down any other rule as governing such cases as the case at bar than that the evidence is to be scrutinized carefully in the light of all the surrounding circumstances to ascertain that such contract has been established

by clear and convincing evidence. In *Ward* v. *New York Life Ins. Co. (supra)* Chief Judge HISCOCK says, in speaking of such a case: "The general rule as to weight and quality of evidence is no different in one case than in the other." In applying the rule and test of specific evidence, however, it very likely will and should occur that the triers of fact will more carefully and critically scrutinize evidence offered against a dead person's estate for the purpose of deciding whether it does make the necessary weight and preponderance of evidence, than would be done if the testimony was offered against one who was alive to contradict it. This is what we construe the expressions in the opinions to which we have referred to mean. As was said by Judge CRANE in *McKeon* v. *Van Slyck* (223 N. Y. 392, 397), writing upon this subject: "In civil cases a plaintiff is never required to prove his case by more than a preponderance of evidence. This is as true of actions against an executor, founded on claims put forward for the first time after the death of the testator, as it is of other actions. * * * No doubt in determining whether the preponderance exists, the triers of the facts must not forget that death has sealed the lips of the alleged promisor. They may reject evidence in such circumstances which might satisfy them if the promisor were living. They must cast in the balance the evidence offered upon the one side and the opportunities for disproof upon the other. They may, therefore, be properly instructed that to make out a preponderance, the evidence should be clear and convincing. * * * But all these instructions in last analysis are mere counsels of caution.'"

It will thus be seen that while the weight to be given to such evidence is no longer stated as a rule, nevertheless, substantially the same considerations which governed former decisions in cases of this kind are to control us as well as the trial court as to what weight should be attached to evidence against an estate where the lips of the promisor have been closed by death.

Upon all the evidence in this case we are convinced that the contract in question was the result of an after-thought on the part of the plaintiff and that the testimony in support of it is not convincing, while the evidence against it is almost entirely inconsistent with its existence. The paternal uncle of the plaintiff is the only witness who swears to the contract of September, 1898. He does not claim to remember the words used by the deceased, but he does give the substance of the statements made by the deceased. The statements made by the deceased to the uncle and to other witnesses during the twenty years between the date of the alleged agreement and her death in a measure confirm the making of the

agreement. But this uncle said on the trial that he never mentioned what he remembered about the 1898 talk until about a week before the trial, although he admits he advised the plaintiff that she would have to give up the bank books which plaintiff claimed had been given to her by the deceased sometime before her death. If the contract of September, 1898, was in fact made it is strange indeed that the plaintiff did not set it up in her answers in the bank book cases.

The judgment and order appealed from should be reversed on law and fact and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.