## In the Matter of the Estate of SARAH A. OTIS, Deceased.

Surrogate's Court, Clinton County, January 7, 1926.

**Executors and administrators — claims against estate — claim by woman, who erroneously believed she was adopted daughter of decedent, and her husband for maintenance and care of decedent — recovery may be had upon quantum meruit — evidence must be clear and convincing — family relationship sufficient to raise presumption that services were gratuitous — evidence neither overcomes presumption nor shows agreement for payment — administratrix not entitled to costs under Surrogate's Court Act, § 278 — matters considered by surrogate in exercising discretion under said section.**

In a proceeding on the judicial settlement of the accounts of an administratrix wherein claim is made for support, care, labor and maintenance of the decedent, a recovery may be had upon *quantum meruit*, though an express contract for the payment of the alleged services is not established, if the claimants show by a fair preponderance of evidence the rendition of services under such circumstances as imply an agreement to pay therefor. However, the evidence should be clear and convincing, and for the purpose of determining whether such a fair preponderance has been established, the evidence offered against decedent's estate should be more carefully scrutinized than would be necessary if the testimony were offered against one in a position to contradict it.

Accordingly, the claim of a woman, who erroneously believed she was the adopted daughter of the decedent herein, for the cost of food and clothing furnished the decedent and for work and labor in caring for her, and the claim of her husband for support and maintenance of the decedent and labor in caring for her must be rejected, where the evidence offered on behalf of claimants neither overcomes the presumption that the family relationship existing between the woman and the decedent was such that her services to the decedent were gratuitous nor warrants the finding of the existence of an agreement, either express or implied, that the services rendered by the claimants were to be paid for by the decedent, particularly where the services rendered by the woman were given at a time when she had no other home than that with the decedent and were no more than any person standing in such relationship to the decedent might have rendered her.

In the discretion of the surrogate, under section 278 of the Surrogate's Court Act, costs will not be awarded to the administratrix against the claimants.

The surrogate, in exercising the discretion given him by section 278 of the Surrogate's Court Act, should consider, among other things, section 1499 of the Civil Practice Act, the nature of the claim, the relationship of the parties thereto, whether there was any reasonable basis for the claim presented, and, finally, whether the payment thereof was unreasonably or carelessly rejected.

PROCEEDING on the judicial settlement of the accounts of an administratrix for the determination of two rejected claims.

*Jeremiah W. Davern,* for Elsie M. Howe and George E. Howe, claimants.

*Wallace E. Pierce,* for Nettie Napper, administratrix.

HARRINGTON, S. The deceased died intestate on March 26, 1923. The inventory of the estate shows personal property of the appraised value of $1,162.90, and no real estate.

The claim of Elsie M. Howe of $426 is for the cost of food and clothing furnished the deceased, and for work and labor in caring for her for 142 weeks, during the period from September 21, 1917, to January 1, 1921, at $3 per week.

The claim of George E. Howe of $348 is for support and maintenance of the deceased, and labor in caring for her for 116 weeks during the period from January 1, 1921, to March 26, 1923, at $3 per week.

As the claimants are husband and wife, and as the facts and circumstances in connection with each claim are quite similar, it would seem proper to consider both claims together.

The evidence in support of the claim of Elsie M. Howe shows that until the death of the deceased she believed that she was an adopted daughter of the deceased. As a matter of fact, however, it appears that she was not the adopted daughter of the deceased but of a former husband of the deceased, but had always lived with deceased from childhood and referred to deceased as her mother. In other words, the family relationship of parent and child had always existed between them. During the period covered by her claim, claimant was not living with her husband but made her home with the deceased. On cross-examination, however, she admitted that during the periods October, 1918, to February, 1919, summer of 1919, fall of 1919, to April, 1920, and summer of 1920, she worked at various places outside of the city where the deceased resided, and during such periods she visited the deceased only occasionally on week ends. Hence, during the greater portion of the period covered by the claim as filed by her she did not actually reside with the deceased. A groceryman testified on claimant's behalf that she instructed him to allow the deceased to buy groceries from him and charge the same to her account; that groceries were so purchased during the period covered by her claim, by both the claimant and the deceased, the same being charged to claimant's account, and that the bill for the same averaged about three dollars and fifty cents per week. He could not state, however, what part of this sum was for groceries purchased by the deceased alone. The husband of the claimant testified to a conversation with the deceased, in which she advised him that the claimant had sent her at various

Misc. 741]        Surrogate's Court, Clinton County, January, 1926.

times clothes, sugar, turkey and money to buy meat and coal. The extent of such furnishings was not given. A sister of the claimant testified to a conversation with the deceased, in which the deceased stated that the claimant had bought for her clothes, food, fuel, etc., and that what she, the deceased, had would be the claimant's when she was gone. Another witness, not related to claimant, testified to meeting the deceased on the street one day and that the deceased told her that she had just received a *present* from the claimant, mentioning chicken, money for her grocery bill, etc., and that when she was gone, if she had anything left, it was going to the claimant.

On behalf of the claim of George E. Howe, his son testified that about Christmas, 1920, he went to the residence of the deceased with his father; that at this time his mother was living with the deceased, but his father was not living with them; that while he was in the dining room he overheard a conversation between his father and the deceased, who were in the kitchen, in which the deceased told his father that if he would come back to her house, whatever she had would be his and his wife's; that the claimant, George E. Howe, replied that he would let the deceased know; that shortly thereafter his father did go back and live with his mother and the deceased at the residence of the deceased. The owner of a meat market testified that meats amounting to an average of six dollars per week were bought by the deceased or the claimant, and were always paid for by the claimant. The witness did not state, however, what part of this sum was for purchases made by the deceased alone.

At the close of the evidence on behalf of claimant in both of these proceedings, counsel for the administratrix moved to dismiss the same, with costs against the claimants, on the ground that the evidence submitted was not sufficient to establish the claims. Decision was reserved pending the filing of briefs by counsel for the parties.

In each case the claimant seeks to recover upon *quantum meruit* for the value of services rendered the deceased, as alleged. A recovery may be had in such cases upon *quantum meruit*, even though an expressed contract for the payment of the alleged services is not established, if the evidence shows the rendition of services under such circumstances as imply an agreement to pay therefor. (*Sturtevant* v. *Fiss, Doerr & Carroll Horse Co.*, 173 App. Div. 113, 115; *Matter of Wood*, 193 id. 473, 474; *McKeon* v. *Van Slyck*, 223 N. Y. 392, 399.) Also, when a contract is made for services to be compensated by a fixed sum in the will of the one receiving them, upon failure of performance the claimant may sue to recover said sum from the representative of the estate. If the same is not agreed

upon, the claimant may recover the actual value of the services rendered upon *quantum meruit.* (*Robinson* v. *Raynor*, 28 N. Y. 494, 496; *Reynolds* v. *Robinson*, 64 id. 589, 594; *Collier* v. *Rutledge*, 136 id. 621, 622; *Chambers* v. *Boyd*, 116 App. Div. 208, 211; *Lasher* v. *McDermott*, 173 id. 79; *Matter of Wood*, 207 id. 41, 45.)

It is now well settled that in such actions, as well as in other civil actions, the claimant is required to prove his case by a fair preponderance of evidence only. (*McKeon* v. *Van Slyck, supra; Kenny* v. *Carroll*, 207 App. Div. 729, 731, 732; *Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314, 322; *Matter of Sherman*, 227 id. 350, 353, 354; *Caldwell* v. *Lucas*, 233 id. 248, 254.) The law does not specify of what the evidence shall consist to make out a fair preponderance. It is for the triers of facts to take into consideration all the circumstances, such as the nature of the claim, tardiness in its presentation after the death of the person against whose estate the claim is presented, etc. However, the evidence should be clear and convicing and for the purpose of determining whether such a fair preponderance has been established the triers of facts may and should more carefully scrutinize evidence offered against a decedent's estate than would be done if the testimony was offered against one who was alive to contradict it. (*McKeon* v. *Van Slyck; Ward* v. *New York Life Ins. Co.; Matter of Sherman* and *Caldwell* v. *Lucas, supra.*)

In such cases the testimony of an interested party need not as a matter of law be corroborated by a disinterested party, but it should be carefully scrutinized. (*McKeon* v. *Van Slyck* and *Matter of Sherman, supra.*) But in order that such proof may come within the rule requiring a fair preponderance of evidence in favor of the claimant, the courts have made it plain that oral declarations of an intention to bequeath one's estate to another ought not to be held sufficient basis for deciding that a contract to this effect existed, unless said declarations are corroborated in all substantial particulars by disinterested witnesses. (*Hamlin* v. *Stevens*, 177 N. Y. 39, 50; *McKeon* v. *Van Slyck, supra.*)

I am convinced that the evidence in neither of these claims satisfies the requirements which should exist in order to warrant a recovery thereon.

As heretofore stated, Elsie M. Howe from her childhood occupied the relationship to the deceased of an adopted daughter and always referred to the deceased as her mother. In fact, she did not discover that she was not the adopted daughter of the deceased until after the death of the deceased. On April 2, 1923, letters of administration on the deceased's estate were first granted to her and her husband, upon her representation, which was apparently

made in good faith, that she was the daughter of the deceased, and as such was entitled to her estate. Later, and on July 24, 1923, on the petition of the present administratrix, a sister of the deceased, said letters of administration were revoked, on the ground that the claimant was not the daughter of the deceased, nor in anywise related to her. Letters of administration were then issued to the present administratrix. Not until August 13, 1923, were these two claims filed against this estate.

The family relationship between the claimant and the deceased was such that her services to the deceased are presumed to be gratuitous. (*Matter of Dailey*, 43 Misc. 552, 555.) This, however, is only a presumption, and if the evidence is such as to overcome it, the c aimant is then in the same position as if such services had been rendered to a stranger. (*Matter of Dailey*, *supra*.) I do not believe the evidence offered on behalf of claimant overcomes this presumption. Nor, having in mind the rules which should govern in considering the weight to be given evidence in cases of this kind, do I believe that claimant has established her claim by such clear and convincing evidence as would warrant a recovery thereon. In order to warrant such a recovery, there must exist an agreement, either expressed or implied, that the services rendered by the claimant were to be paid for by the deceased. The evidence fails to disclose anything that would warrant a finding that such an agreement existed. Nor does the evidence disclose that any intention of the deceased to pay claimant for her services was communicated to her. The services rendered were so rendered at a time when claimant had no other home than that with the deceased, and were no more than any person standing in such relationship to the deceased might have rendered her. By claimant's own testimony on cross-examination, it appears that during the greater part of the period covered by her claim she did not continuously reside with the deceased, but merely visited her on week ends. No evidence was offered to show how she came to make her home with the deceased during this period. In view of the fact that she was not living with her husband during this time, it is only natural to assume that she returned to the home of the deceased, with whom she had always lived from childhood for personal reasons, and that no agreement, either expressed or implied, existed that by doing so she would be paid for any services rendered by her to the deceased.

It may be that such services were rendered by the claimant with an expectation that she would be compensated by a provision in the will of the deceased in her favor, or because of her assumed relationship to deceased that she would succeed to her estate. The fact that neither of these claims were presented against the

estate until after claimant ascertained that she was not the adopted daughter of the deceased would indicate that such an expectation might have existed. But such an expectation when not realized does not afford a basis for a claim against a decedent's estate for the value of services rendered. (*Robinson* v. *Raynor*, 28 N. Y. 494, 496.) Such an expectation cannot be substituted for the agreement, either expressed or implied, that must exist in order to authorize a recovery for the value of the alleged services.

Of the witnesses who testified on behalf of claimant, one was her husband and another her sister. While they are competent witnesses under section 347 of the Civil Practice Act, they are, however, interested witnesses. (*Matter of Wood*, 185 App. Div. 936; *Matter of Buoninfante*, 125 Misc. 907; *Matter of McMillan*, 167 App. Div. 817; affd., 218 N. Y. 64; *Ennis* v. *Chichester*, 187 App. Div. 53, 72; affd., without opinion, 227 N. Y. 663; *Matter of Van Vranken*, 120 Misc. 280.) Only the third witness can be said to be a disinterested witness. But the testimony of each of these witnesses was merely to the effect that the deceased had stated that claimant had been good to her, had furnished her with various articles, and that claimant would have what she had when she was " gone." In view of the relationship that existed between claimant and the deceased, and the nature of the evidence offered on behalf of claimant, I believe that claimant has failed to show by any clear or convincing testimony that any agreement, either expressed or implied, existed between her and the deceased that payment should be made for any services rendered by her to the deceased.

The only evidence offered to show that an agreement existed between the deceased and George E. Howe for the payment of any services to be rendered by him to the deceased is the testimony of his son. Again, while the witness is competent under section 347 of the Civil Practice Act, he is an interested witness. (See cases last above cited.) The alleged declaration of the deceased is not corroborated by any disinterested witnesses. As a matter of law, it need not be; but, as pointed out by the decisions heretofore cited, the courts have made it plain that oral declarations of an intention to bequeath one's estate to another ought not to be held sufficient basis for deciding that a contract to this effect existed between the parties, unless such declarations are corroborated in all substantial particulars by disinterested witnesses. In view of the fact that when claimant went to live with the deceased, he was by such act also resuming his marital relationship with his wife, who for some years past had made her home with the deceased, and because the evidence on his behalf given by his son was not corroborated by any disinterested witnesses, claimant has failed

to establish by any clear or convincing evidence that an agreement existed that he should be paid for any services to be rendered the deceased.

The following are some of the many cases of record where the nature of the claims and the evidence in support thereof are very similar to the claims in question, and where recovery was not allowed: *Ward* v. *New York Life Ins. Co.* (supra); *Kenny* v. *Carroll* (supra); *Matter of O'Neill* (49 App. Div. 414); *Matter of Furniss* (86 id. 96); *Kane* v. *Smith* (109 id. 163); *Hoffman* v. *Condon* (134 id. 205); *Matter of Sheive* (195 id. 631); *Smith* v. *Burhyte* (197 id. 725); *Donnarumma* v. *Potter* (211 id. 54).

When evidence offered by a claimant does not come up to the standard required by our higher courts in order to warrant a recovery thereon, the trial justice should grant a motion to dismiss the same. (*Lucas* v. *Boss*, 110 App. Div. 220, 225; *Hoffman* v. *Condon*, supra, 206.)

As the evidence offered in each of these two cases does not, in my opinion, satisfy the requirements which should guide the judgment of this court in determining that a recovery is warranted, the motion to dismiss both of these claims is granted.

Should costs be awarded to the administratrix against each of these claimants?

It seems to be well established that the allowance of costs in such cases is in the discretion of the surrogate. (Surrogate's Court Act, § 278; *Matter of Ingraham*, 35 Misc. 577; *Matter of Coonley*, 38 id. 219; *Matter of Kohler*, 99 id. 233.)

Aside from the three cases last above cited, there seem to be no cases of record that discuss what matters the surrogate should take into consideration in deciding whether or not costs should be awarded either to the claimant or to the representative of the estate. In *Matter of Ingraham* (supra) the surrogate held that in cases of this kind the discretion of the surrogate should be guided by the principles and decisions relating to the question of costs in actions at law against estates, as provided in sections 1835 and 1836 of the Code of Civil Procedure, now section 1499 of the Civil Practice Act. The reasoning of the surrogate in that case was followed by the surrogate in *Matter of Kohler* (supra). In *Matter of Coonley* (supra) the surrogate disagreed with the reasoning of the surrogate in *Matter of Ingraham* (supra) and held that in such cases the surrogate should determine the question without reference to sections 1835 and 1836 of the Code of Civil Procedure, now section 1499 of the Civil Practice Act.

Section 278 of the Surrogate's Court Act (as amd. by Laws of 1925, chap. 581) makes it very plain that costs are to be

allowed by a surrogate in such cases, in his discretion, limited only as to the amount as therein mentioned. As a matter of strict statutory construction, it would seem unwarranted to say that in so exercising his discretion the surrogate *must* be bound by the same considerations as are mentioned in section 1499 of the Civil Practice Act, in order to award costs in an action as therein mentioned. If this had been the legislative intent, it would have been a very easy matter to have so stated. However, the context of section 1499 of the Civil Practice Act would seem to indicate that the prohibition against awarding costs against the representative of an estate, except for the reasons therein mentioned, was for the purpose of preventing such representative being penalized by awarding costs against him as an unsuccessful contestant, even though the rejection of the claim contested was made in good faith and within a reasonable time after its presentation to him. Hence, in arriving at a decision as to what matters should be considered by the surrogate before awarding or denying costs under section 278 of the Surrogate's Court Act, it would seem well for a surrogate to have in mind the same considerations as mentioned in section 1499 of the Civil Practice Act, for the purposes therein mentioned, not because the surrogate is bound to do so because of said section, but because fair reasoning on the part of the surrogate would indicate that he should take such matters into consideration, together with any other facts and circumstances in connection with the case in point, in order that the discretion thus exercised by him will be reasonable. A claimant is not compelled to submit his claim for determination upon the judicial settlement of the accounts of the representative of the estate. He may bring an action at law upon the same. Presumably, the facts in regard to the claim would be the same regardless of what court passed upon the matter. It would seem only logical, therefore, to conclude that the same general principles which govern the discretion of the court in allowing or denying costs should be the same in either court.

I believe, therefore, that in exercising the discretion given the surrogate under section 278 of the Surrogate's Court Act, the surrogate should consider, among other things, the nature of the claim, the relationship of the parties thereto, whether there was any reasonable basis for the claim presented, and, finally, whether the payment thereof was unreasonably or carelessly rejected. Applying these considerations to the cases in question, I do not believe that costs should be awarded to the administratrix against these claimants.

The motion for costs is, therefore, denied.