## In the Matter of the Estate of IDA M. HALL, Deceased.

Surrogate's Court, Clinton County, August 27, 1932.

*Booth & Booth*, for the claimant Elizabeth Peets.

*Boire & Kehoe* [*Victor F. Boire* of counsel], for the administrators.

HARRINGTON, S.  Decedent, a resident of the city of Plattsburg, N. Y., died intestate on September 15, 1930.  The appraised value of her estate, as of the date of her death, as shown by the inventory filed, shows a gross estate of $326,000.  The claim filed by Mrs. Peets against the estate is for board, room and nursing services rendered decedent during her lifetime and covering various periods, beginning August 16, 1918, and continuing to the date of her death.  The gross amount of the claim as filed was $4,441.  Upon this amount was credited the sum of $806 paid to claimant by decedent during her lifetime, and the further sum of $276 paid to claimant by the administrators after decedent's death, or a total credit of $1,082.  At the opening of the hearing in this matter, claimant withdrew that part of her claim covering the period

from November 1, 1919, to April 1, 1921, amounting to $515, leaving the balance sought to be recovered in this proceeding $2,844.

Decedent's nearest relatives were first cousins, none of whom had been in close association with her for many years. She owned two large houses on Bridge street in the city of Plattsburg and there made her home. For some years until 1929 she had a caretaker living with her. In 1929 the caretaker died and after that, except for the time she lived elsewhere, she lived alone. The testimony indicates clearly that decedent was a very eccentric person. The condition of her two houses was unusual. One of the administrators testified that after her decease there was removed from her two houses approximately 170 truck loads of newspapers, magazines and other rubbish; that in this rubbish was found unused checks, money orders, securities, etc., of the approximate value of $30,000. The testimony offered in behalf of claimant indicates that decedent was very reluctant to pay her debts and in fact was just as reluctant to receive payment from those who were indebted to her. This is important in considering why this alleged indebtedness of decedent to claimant was allowed to remain unpaid for so many years.

Claimant lived only a short distance from the two houses owned by decedent. During all the period covered by the claim filed herein, claimant conducted a boarding house. Without giving in detail the testimony offered by claimant in support of the claim it is sufficient to say that the testimony indicates that during the period covered by the claim the decedent did take her meals regularly at claimant's home. Such testimony was given by persons who were boarders at claimant's home during the period covered by the claim. While some of these witnesses were relatives of claimant, their testimony was corroborated by others who were not so related. Such testimony also shows that on many occasions in the presence of some of these witnesses claimant would request payment from decedent for such indebtedness and decedent would always say that she was going to pay claimant. While evidence was given by the administrators to indicate that during this same period decedent had occasional meals elsewhere, and also purchased eatables for her own home, I do not believe that such testimony is of such a nature as to overcome the proof offered by claimant to indicate that decedent was one of her regular boarders. There is no evidence of any relationship between claimant and decedent to indicate that the items covered in this claim were intended to be gratuitous.

No proof was offered of an express contract made by the dece-

dent to pay for the items in the claim presented herein. However, a recovery may be had in such cases upon *quantum meruit*, even though an express contract for the payment of alleged services is not established, if the evidence shows the rendition of services under such circumstances as imply an agreement to pay therefor. (*Sturtevant* v. *Fiss, Doerr & Carroll Horse Co.*, 173 App. Div. 113, 115; *Matter of Wood*, 193 id. 473, 474; *McKeon* v. *Van Slyck*, 223 N. Y. 392, 399.)

It is now well settled that in such actions, as well as in other civil actions, the claimant is required to prove his case by a fair preponderance of evidence only. (*McKeon* v. *Van Slyck, supra; Kenny* v. *Carroll*, 207 App. Div. 729, 731, 732; *Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314, 322; *Matter of Sherman*, 227 id. 350, 353, 354; *Caldwell* v. *Lucas*, 233 id. 248, 254.) The law does not specify of what the evidence shall consist to make out a fair preponderance. It is for the triers of facts to take into consideration all the circumstances, such as the nature of the claim, tardiness in its presentation after the death of the person against whose estate the claim is presented, etc. However, the evidence should be clear and convincing and for the purpose of determining whether such a fair preponderance has been established the triers of facts may and should more carefully scrutinize evidence offered against a decedent's estate than would be done if the testimony was offered against one who was alive to contradict it. (*McKeon* v. *Van Slyck, supra; Ward* v. *New York Life Ins. Co., supra; Matter of Sherman, supra; Caldwell* v. *Lucas, supra.*)

I believe the evidence offered in this case fulfills the requirements regarded as a prerequisite for allowing such claims. Does the Statute of Limitations prevent a recovery as to part of this claim? The only payments made to claimant by decedent during her lifetime consisted of four checks of twenty-five dollars each, given between December, 1929, and March, 1930. There is nothing on said checks to indicate the purpose for which they were given. On June 11, 1930, claimant's attorneys wrote decedent advising her that claimant had placed in their hands for collection a claim for board against her covering a period of approximately ten years; that a substantial payment on account of such indebtedness should be made at once; that such payment should include the last items for which decedent obligated herself, namely, for board and room from August 14, 1929, to date in the sum of $600 and for board from July, 1928, through November, 1928, in the sum of $150, making a total of $750; that upon payment of said sum said attorneys would take up with her the matter of a general accounting covering the entire period for which payment was demanded for board and

room furnished decedent by claimant. As a result of that letter the items above mentioned in the sum of $750 were settled for the sum of $706, and a receipt was given decedent for that sum " in full payment of that portion of said account for board, room and personal services furnished by Mrs. Peets from July 1, 1928, to July 14, 1930." After decedent's death the administrators paid claimant the sum of $276 for various services rendered decedent by claimant from July 14, 1930, to the date of decedent's death, and for services rendered by claimant in connection with decedent's funeral.

It is clear that the Statute of Limitations is a bar to the payment of all items in this claim, prior to six years previous to decedent's death, unless the four payments of twenty-five dollars each, as above mentioned, are to be given such an effect as to take the claim out of the operation of the Statute of Limitations. (Civ. Prac. Act, §§ 48, 59.) The decisions on the matter of the effect of a part payment so as to prevent a debt from being within the Statute of Limitations are very numerous. While they would also seem to be conflicting, I believe this is explained primarily by reason of the facts pertaining to each particular case. The cases of *Gilbert* v. *Comstock* (93 N. Y. 484) and *Matter of Gardner* (103 id. 533) are cited by claimant to indicate that the four payments of twenty-five dollars each should be held to be of such a nature as to take this case out of the Statute of Limitations. A careful reading of those cases indicates that in each case the payments made on the account specified the purpose therefor. Accordingly, in each of said cases the claim was allowed for a period of six years prior to the first of such payments and from the date of such payments to the date of decedent's death, such latter period not being in excess of six years. Those cases are not in point with the case at bar for the reason that in the present case there is nothing to indicate that the four payments of twenty-five dollars each were made by the decedent as a part payment by her on a larger indebtedness recognized by her as being due the claimant at the time such payments were made.

While claimant's attorneys urge that such payments must have been made by decedent to apply on decedent's previous indebtedness to claimant for the items covered in the claim, I do not believe any such intent can be implied in this case. Claimant's attorney testified that when the settlement in part of this claim in the sum of $706, as above mentioned, was perfected, decedent would not agree on the sum then alleged to be due claimant from decedent; that he could not get her to commit herself to anything. Despite the testimony of several witnesses that decedent had on many

occasions promised to pay claimant, such testimony did not indicate the amount to be paid nor the period during which a charge for such services should be made. Such testimony, together with that of claimant's attorney, as above mentioned, clearly prevents an implication that the four payments of twenty-five dollars each were intended by decedent to apply on a larger indebtedness to claimant or that such payments should be regarded as a recognition of it by decedent.

I believe the rule applicable in this case is as stated in *Adams* v. *Olin* (140 N. Y. 150, 159), as follows: " In order that a payment shall operate to revive a debt barred by limitation of time, it should appear, in some reasonably intelligible way, to have been made on account of the previous debt; and, in the absence of evidence tending to prove that fact, we should refuse to draw an inference from a condition of things, which is as consistent with one theory as with another. If it is uncertain, or ambiguous, whether a payment was made as an independent transaction between the parties, and not connected with by-gone transactions; or whether it was made on account of some precedent and lapsed debt, no inference should be drawn of an admission thereby of the old debt; for, to operate as such an admission, the payment must have been a deliberate act of the debtor, evidencing, or accompanied by some evidence of, an intention to thereby acknowledge to his creditor the existence of the greater indebtedness." To the same effect see *Crow* v. *Gleason* (141 N. Y. 489, 493): " In order to make a money payment a part payment within the statute, the burden is upon the creditor to show that it was a payment of a portion of the admitted debt, and that it was paid to and accepted by him as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder. Part payment of a debt is not of itself conclusive to take the case out of the statute. In order to have that effect it must not only appear that the payment was made on account of a debt, but also on account of the debt for which action is brought, and that the payment was made as a part of a larger indebtedness, and under such circumstances as warrant a jury in finding an implied promise to pay the balance. If it be doubtful whether the payment was a part payment of an existing debt, more being admitted to be due, or whether the payment was intended by the party to satisfy the whole of the demand against him, the payment cannot operate as an admission of a debt so as to extend the period of limitation. If there be a mere naked payment of money without anything to show on what account, or for what reason the money

was paid, the payment will be of no avail under the statute. The payment must be made under such circumstances as to show a recognition of a larger debt remaining unpaid. These rules, in varying phraseology, are laid down and illustrated in many authorities."

It is also clear that the payment of $706 cannot be construed as a part payment on the whole account so as to take the case out of the Statute of Limitations as that payment was for specific items in the account. (See *Blair* v. *Lynch*, 105 N. Y. 636, 639, 640.)

Counsel for claimant urges that the administrators having failed to set up the Statute of Limitations as a defense in rejecting the claim cannot do so on the trial of the claim. There would seem to be no basis for such argument. Section 30 of the Civil Practice Act provides that the objection that an action was not commenced within the time limited by statute must be taken by answer. Section 211 of Surrogate's Court Act provides that a rejected claim shall be tried and determined upon the judicial settlement, unless an action for the recovery thereof against the representative of the estate is commenced within three months after the rejection of the claim. It should be noticed that the latter section does not incorporate the provision of section 30 of the Civil Practice Act. It would, therefore, seem that a representative of an estate is at liberty to plead the Statute of Limitations as a defense to a claim against an estate upon the judicial settlement. It is the duty of a representative of an estate to plead the Statute of Limitations as a defense to such a claim against the estate, as he has no authority to allow a claim so barred. (*Butler* v. *Johnson*, 111 N. Y. 204.)

I must, therefore, hold that the claim filed herein is barred by the Statute of Limitations as to all items prior to September 15, 1924, that being six years previous to decedent's death. The only remaining item in the claim as filed within that period which has not been paid is an item for board from April 12, 1925, to July 1, 1928, a period of 1,174 days, with a charge therefor of $1 per day, making a total of $1,174. This sum of $1,174 is hereby allowed claimant in full for her demands against decedent's estate, with interest thereon from January 14, 1931, the date when a claim for such item was duly served upon the administrators of the estate, no previous itemized statement of such account having been served on the decedent. Costs to be allowed to claimant pursuant to section 278 of the Surrogate's Court Act, to be taxed upon five days' notice to all parties.

Prepare decree accordingly.