In the Matter of the Estate of CHARLES H. TURNER, Deceased.

Surrogate's Court, Clinton County, June 19, 1933.

*Feinberg & Jerry* [*Harold A. Jerry* of counsel], for the petitioner, R. Prescott Company, Inc.

*Patrick J. Tierney*, for the claimant, Minnie Gladu.

*Oliver A. Wolcott*, for Clifford E. Turner and Corrine A. Dwyer, administrators c. t. a.

HARRINGTON, S. Charles H. Turner died October 21, 1929. His will was admitted to probate by this court on February 24, 1930, and letters testamentary were issued to his widow, Delia Turner. Delia Turner died on March 27, 1930. Thereafter and on February 17, 1931, Clifford E. Turner and Corrine A. Dwyer were duly appointed administrators c. t. a. of the estate of Charles H. Turner. The inventory filed in the estate of Mr. Turner shows personal property consisting of household furniture, etc., set aside to the widow, Delia Turner, of the appraised value of $282.20. The only other property in the estate consisted of real estate of the appraised value of $2,325.

R. Prescott Company, Inc., presented a claim against the estate of Mr. Turner for funeral expenses of Delia Turner in the sum of $280. Minnie Gladu, a daughter of Delia Turner by a previous marriage, has presented a claim for $287.39 for various bills paid by her with funds of Delia Turner for her maintenance and support during her last illness, consisting of salaries to nurses, $183; board of nurse, $22; washings for Delia Turner, $36; also for disbursements

made by Delia Turner as follows: $11.39 for taxes on real estate of Charles H. Turner and $35 for legal services to the attorney for the executor of Mr. Turner's estate. Minnie Gladu is the sole heir at law of Delia Turner. Charles H. Turner was survived by seven children by a marriage previous to that with Mrs. Delia Turner.

It appears from the testimony in this case that the only property that might have been possessed by Delia Turner at the time of her decease was the personal property set aside to her in the inventory in her husband's estate, together with such part of the sum of $658.71 received by her as insurance on her husband's life as may not have been expended by her during her lifetime. In December, 1929, Delia Turner moved to the home of her daughter, Minnie Gladu, and resided there until her decease. It appears that she was ill during all of that time and saw practically no one and did not transact any business matters. Her daughter, Minnie Gladu, testified that she did not know what had become of the furniture set aside to her mother, as above mentioned. She also testified that from the insurance moneys paid to her mother, her mother spent $160 for her personal use; that her mother also paid for taxes on the real estate of Mr. Turner the sum of $11.39 and for legal services to the attorney for the executor of the estate of Charles Turner the sum of $35; that her mother deposited in the Keeseville National Bank the sum of $400 to the credit of Minnie Gladu; that from this deposit she, Minnie Gladu, spent $241 for nurses' services, nurses' board, washings, etc., and also further sums, the exact amount of which she did not know, for medicine; all of such expenditures having been made for the care and support of her mother during her last illness. This leaves unaccounted for the sum of $211.32 from the amount received by Delia Turner as the proceeds of the life insurance on Mr. Turner's life. Minnie Gladu testified that she did not know what became of this sum which is unaccounted for.

Whether or not these two claims are proper charges against the estate of Mr. Turner is dependent upon the construction of his will, the essential paragraphs of which read as follows:

"*Second.* I hereby give, devise and bequeath to my beloved wife, Delia Turner, the use during her natural life of all the property of which I die seized and possessed, both real and personal, with the right to use any part or all of said property, the principal thereof, both real and personal, for such support, care and maintenance, making such support, care and maintenance a charge upon all my property, both real and personal.

"*Third.* Should any of said property remain after my said wife's death I hereby give, devise and bequeath the same to my children

living at the time of my death, equally, share and share alike, to them and to their heirs forever."

While neither the petition nor the citation for this compulsory judicial settlement contained a request that the will of the decedent herein be judicially construed, it would seem that this court has ample authority to construe a will in a proceeding for the judicial settlement of the accounts of a representative of an estate when such determination is necessary in order to make a decree as to the distribution. (*Garlock* v. *Vandevort*, 128 N. Y. 374; Heaton Surr. Ct. [5th ed.] 381.)

Counsel for the petitioner claimant cites as authority for the propriety of making the funeral expenses of Delia Turner a charge upon the estate of Charles H. Turner, the cases of *Matter of Von De Walker* (79 Misc. 661) and *Matter of Montgomery* (129 id. 14). In both of those cases the will of the testator permitted an invasion of the corpus of the estate for the proper maintenance and support of the life tenant. In both cases it appears that the life tenant left no estate, and the question was whether in such a case it was proper that the funeral expenses of the life tenant be paid from the corpus of the estate. In each case the court held that such a charge was proper. In the instant case the language of the will is such that I would have no hesitancy in deciding that the funeral expenses of Delia Turner were a proper charge upon the estate of Charles H. Turner, if the testimony had indicated that Delia Turner left no estate. Even though we disregard the fact that the disposition of part of the funds which Mrs. Turner received a few months before death is unaccounted for to the extent of $211.32, and the disposition of the personal property set aside to her in her husband's estate of the appraised value of $282.20 is also unaccounted for, the testimony indicates that her daughter, Minnie Gladu, expended for the care and support of her mother the sum of $241, which funds must be held to have been the property of Delia Turner, for there is nothing to indicate that the deposit of these funds by Delia Turner in the name of Minnie Gladu was intended to be a gift to the latter. Presumably such deposit was made as a matter of convenience only. Delia Turner also expended from her own funds for attorney's fees in her husband's estate and taxes the sum of $46.39. These two items, amounting to $287.39, constitute a proper claim in favor of the estate of Delia Turner against the estate of Charles H. Turner, for they represent sums paid for her proper maintenance and support from her own personal funds, which items were by the terms of the will of Charles H. Turner expressly made a charge against both the income and principal of his estate. (*Matter of Van Zandt,*

231 App. Div. 381.) Accordingly, until it is shown that such a claim is worthless, this sum must be considered as an asset in the estate of Delia Turner. Furthermore, as the amount of this claim, if collected, is sufficient to pay in full the funeral expenses of Delia Turner, the claim presented herein for her funeral expenses against the estate of Charles H. Turner cannot be allowed but it is a proper charge against the estate of Delia Turner. (*Matter of Van Zandt, supra.*)

Presumably the claim of Minnie Gladu against the estate herein was presented upon the theory that the funds which she had expended for the care and support of her mother herein mentioned, were made from her own personal funds. For the reasons above mentioned, this would not appear to be correct. All of the circumstances surrounding the matter indicate on the contrary that the deposit made to the credit of Minnie Gladu was in form made as a matter of convenience to Delia Turner. At the time of such deposit Delia Turner was living with Minnie Gladu and continued to live with her until she died. The expenditures made were for the care and maintenance of Delia Turner. It would, therefore, seem evident that these funds were at all times the property of Delia Turner. Accordingly, I do not believe that the claim herein presented by Minnie Gladu individually is a proper claim against the estate of Charles H. Turner, but that such a claim is a proper charge against this estate in favor of the representative of the estate of Delia Turner. The result would seem to be, unless the parties herein can otherwise agree, that the petitioner claimant herein will have to secure the appointment of a representative of the estate of Delia Turner, as none has yet been appointed, have the representative of that estate collect its claim herein against the estate of Charles H. Turner and from the proceeds of such claim petition this court for the payment of its claim as a prior charge for funeral expenses upon the assets of such estate. In view of the fact that the reasonableness of the funeral expenses of Delia Turner is conceded by all parties, and also in view of the fact that the only estate of Delia Turner would seem to be the amount of a claim by the representative of her estate against the estate of Charles H. Turner in the sum of $287.39, it would seem that such circuitous practice, as above outlined, might well be avoided, provided Minnie Gladu will consent, by having the representative of the estate of Charles H. Turner draw a check payable to the petitioner claimant herein for the amount of the funeral expenses of Delia Turner in the sum of $280 and a further check payable to Minnie Gladu, individually, provided there are no other creditors of the estate of Delia Turner, for the sum of $7.39, representing

the balance due such estate. I make such suggestion in view of the size of the estate of Delia Turner in order to obviate the incidental expenses that would otherwise occur as there would seem to be ample authority to settle such a small estate as that of Delia Turner without the formality of issuing letters of administration. (*Herrington* v. *Lowman*, 22 App. Div. [3d Dept.] 266; *Matter of Tangerman*, 226 id. [3d Dept.] 162, 164.)

In view of the surrounding circumstances in connection with this case, costs are not allowed to any party. (*Matter of Otis*, 126 Misc. 741, 747, 748.)

Prepare decree accordingly.